TUCKER, P.
The first objection made to the proceedings in this case, is, that the defendant was erroneously compelled to answer whether he had paid off the bonds or not. I am of opinion that this objection cannot be sustained. There seems to have been at one time a doubt, whether a mere bill of discovery would lie, for the purpose of compelling the defendant in an action at law, who had pleaded the statute of limitations, to answer whether he had not made a new promise within five years, in order to avoid the bar. In my early practice, judge Carr dismissed a bill which I filed for that purpose. It seems, however, that the practice has been recognized, and sustained by various *cases, Cork v. Wilcock, 5 Madd. R. 328; Baillie v. Sibbald, 15 Ves. 185 ; Hindman v. Taylor, 2 Bro. C. C. 7. And it is in perfect conformity with the general principle, that where the party cannot establish his case at law by other means than an appeal to the conscience of the defendant, he is entitled to make that appeal. Mitf. Plead. 130, 148 ; Madd. Ch. Prac. 161, 167. Although, therefore, the defendant pleads at law the bar of the statute, yet if the plaintiff avoids the bar by replying a new promise within five years, he may by bill of discovery compel the defendant to answer whether he has made such a promise or not. The case of MacGregor v. The *373 Bast India Company, 2 Sim. 452, so far from impugning this doctrine, seems to me to confirm it ; for it admits, by strong implication, that if the bill had alleged a new promise, and that the defendants had documents in their possession, which would prove it, the defendants must have answered. But if the discovery is compelled in aid of a trial at law in such case, much more should it be enforced, where the bill is filed for relief, and the plaintiff, apprehending the bar of the statute, charges a particular special promise to avoid its operation. The defendant must in such case deny the promise charged, not only by averment in the plea, but by answer also in support of the plea. Mitf. Plead. 212, 213 ; 3 Atk. 70 ; 2 Atk. 51; Bailey v. Adams, 6 Ves. 586, 596 ; Beames’s Pleas in Eq. 169; Kane v. Bloodgood, 7 Johns. Ch. Rep. 90, 134. If this, then, was a bill upon an open account instead of a bond, and the plaintiff had charged a new promise to avoid the bar of the statute, the defendant must have answered to it. It is not perceived, that in the weaker case of presumption, which is but matter of evidence, and, offers no peremptory bar, he should be absolved from answering whether, in truth and in fact, he had paid the debt, in order to avoid the effect of lapse of time in barring the plaintiff’s demand. The presumption may be repelled by *any thing which goes to shew nonpayment. By what can it be more effectually repelled, than by the defendant’s own confession? Of what can he complain, when the fact of his having made payment is to be determined by his own oath ? Whatever the length of time, there is no bar, if he acknowledges that the debt has never been discharged. Such an acknowledgment to a third person, would be good evidence, and would repel the presumption: then, why shall he not be compelled to answer to the fact upon the requisition of the plaintiff ? Under which of the exceptions to the duty to answer can he bring himself ? It subjects him neither to a penalty nor forfeiture, but anerely to the payment of a just debt. It compels him not to disclose his own turpitude nor does it expose him to the danger of a criminal prosecution. It disburthens his conscience by compelling him to do justice. It absolves him from the demand if he swea rs that it has (been paid, and only charges him upon his own confession that it is unpaid. I am therefore clearly of opinion, that the answer was properly enforced.
On the merits of the case, an examination of the record has left no doubts on my mind. The presumption of payment from length of time, on which the defendant first rested his case, has been repelled by the extorted confession in the answer. The defence, that by the original transaction it was designed to bind him only to pay the interest during his father’s life, is not only in conflict with the principle which forbids the contradiction of written contracts by extrinsic evidence, unless there has been fraud, accident or surprise, but it is at variance with the facts and with the defendant’s own conduct. Before it be admitted, he should explain why his deed recites a purchase for the full sum of .£400 ? —why bonds are taken, instead of a simple written engagement to pay his father sixty dollars per annum during his life ?— why three bonds were taken instead *of one ? — why, in the eagerness of the defendant to clutch at any testimony in support of his pretensions (evinced by requesting Reed to reduce to writing his gossip with the old man) he did not at that time, or before, procure from his father himself, the evidence of his rights, if rights he had? and, lastly, why he never thought of this defence until he was compelled to own that the debt was yet unpaid ? Moreover, having but an equity, why has it remained so long unas-serted ? The presumption from length of time, bears with at least as much force against his pretensions, as against the clear documentary evidences of debt on the part of the plaintiff. I am of opinion, therefore, that, in this case, we ought not to presume that the defendant ever had a good equitable defence against these bonds ; a conclusion fortified by his having signed an inventory, in which they were inserted as part of the estate to which his sister was entitled, and by the other evidences in the cause, going to shew very clearly, that his father was not bound to give them up, but that at most he had made him some promise to do so at his death, which promise, being altogether voluntary and unexecuted, cannot be insisted on or enforced.
As to the supposed abandonment of her rights by mrs. Morris, I must content myself with saying, that the facts do not sustain it, nor can it be inferred from the delay. Stick-ley’s testimony proves beyond question, that she still held the bonds after her marriage with Morris, which must, of course, have been within twenty years before suit brought. She said, “ some of her friends wished her to forgive them, but that she refused to do so, and intended making her brother pay the bonds, as the money might be of use to her on a rainy day.” Mrs. Stickley’s testimony is to the same effect. Independently, therefore, of the principle that legal rights are never lost by abandonment, though equitable rights may be, here is neither proof of abandonment, nor sufficient length of time from which to infer it.
*These pretensions on the part of the defendant are the more extraordinary, considering the position he occupied in relation to the debts and the legatee. Constituted by his father one of his executors, the instant he qualified, the amount of those bonds was assets in his hands, subject to debts in default of other personal estate, but otherwise payable to his sister the legatee. It was his duty to pay over the money to her, as soon as the estate was wound up, and it was ascertained that the legacy bequeathed to her would not be impaired by any demands against the estate. Indeed, as he gave up the bonds, or as they were given up to her without opposition on his part, we must take the assent of the executors to have been given to her legacy, and it was the duty of this executor, who owed the debt which had thus become assets in his hands, to pay it to his sister. It is with an *374 ill grace, that he complains of her forbearing to press her claims for her small patrimony. Placed in affluent circumstances, and in no need of the money, she did forbear, leaving to the defendant to make the payment when it suited his pleasure or his convenience. These considerations, together with her coverture for twenty odd years, and her unsettled state of mind, abundantly account for that delay to sue the defendant, on which he now rests his defence against the payment of his sister’s portion of her father’s estate.
Upon weighing the whole matter, I am well content to affirm the decree in all things ; being satisfied to follow the decision of Ten-nant’s ex’or v. Gray, and well convinced, that if interest ought, in any case, to be given beyond the penalty, it was most proper in this case.
CABEXX, X, concurred.
STANARD, J
I think the court below was right in enforcing an answer from the defendant, to the interrogatory of the bill respecting the nonpayment of the *debt in question ; a proceeding, which has been treated, in the argument, as the compelling of a discovery in respect to that matter. But it was no more a discovery coerced, than the requiring of an answer to any other allegation of the bill would have been. The bill was no more a bill of discovery than any other bill in equity. It was brought for a claim that was recoverable only in equity. To all the allegations of such a bill material to the plaintiff’s case, the defendant ought, and may be compelled, to answer. Every bill in equity is, in that sense, a bill of discovery. To every material allegation, the defendant must answer on oath, unless he be protected from the obligation to do so, by the consideration, that his answer would violate professional confidence, or that it would subject him to a penalty &c. The answer of the defendant in equity makes up the issue between the parties: and according to the course of the court of equity, the issue is, in all cases, made on the oath of the defendant; it is not so at law, except in particular cases, under statutory provisions. “.Every plaintiff (in equity) is entitled to have a discovery from the defendant, as to two heads; to enable him to obtain a decree, and to ascertain facts material to the merits of his case, that either he cannot prove, or in aid of proof;” Finch v. Finch, 2 Ves. sen. 592. Lord Eldon, in Cooth v. Jackson, 6 Ves. 37, 8, states the rule thus : “ If the party has a right to relief in this, court, he has a right to an answer from the defendant to every allegation of his bill, the admission of the truth of which, or the proof of the truth of which, is necessary to entitle him to that relief.” If a suit at law had been brought on the bonds of the defendant, he could no otherwise have relied on the presumption of payment from the lapse of time, but by putting the fact of payment' in issue by plea, and then using the lapse of time as evidence to sustain the plea ; and so in equity, unless the pleadings had made that issue, *this evidence could not have been resorted to as proof. The argument on the point turned mainly on the power of the court to enforce discovery on a bill, technically called a bill of discovery, by which the aid of the court is asked to discover matter to be used as evidence before another forum, or where the necessity of seeking a discovery is the ground of the plaintiff’s claim to ask relief from the court of equity, and sustain its jurisdiction in cases in which it would otherwise want jurisdiction. But the case before us belongs to neither of those classes ; and, therefore, though the court might refuse to compel the discovery, if its aid were asked as merely ancillary to a court of law, for the purpose of avoiding the bar of the statute of limitations or of repelling the presumption of payment from lapse of time, it would not follow that the court would, in a regular suit for relief which could be bad in equity only, dispense with an answer to any of the material allegations of the bill. Even where the discovery is sought, only for the purpose of repelling the defence of the statute of limitations at law, the discovery will be enforced. It is so distinctly decided in the case of Cork v. Wilcock, cited at the bar : and the case of MacGregor v. The East India Company is to the same effect; for it was there decided, that the plea to such a bill must distinctly deny, that any assumpsit was made within the term of limitation ; and according to the practice of the court of chancery, such a plea must be sustained by the oath of the party ; Wyat’s Reg. 325.
As to the effect of the lapse of time on the title of the appellee to relief in this court, I have the misfortune to differ from my brethren. The statute of Virginia prevented the extinguishment of the debt (if one was due) from John Baker to his father, in consequence of his appointment and qualification as executor of his father ; but after his appointment and qualification, the legatee of that debt had no remedy but in equity only. *The delivery of the bonds by the executor to the legatee, was an assent to the legacy, and vested in her a right to the debt, if one was due from the defendant to the testator, and was equivalent to the delivery of a specific chattel to the legatee thereof; and it withdrew these bonds from the assets of the testator’s estate, in like manner as they would have been withdrawn from them if the obligor had not been the executor. After this assent to the legacy, and delivery of the bonds to the legatee, the executors, and John Baker as one of them, ceased to be responsible to the legatee as executors : the relation of creditor and debtor,, to the extent that John Baker was indebted, was established between the legatee and him, with this peculiarity, that the creditor had remedy in equity only for her claim. Such being the relation of the parties in 1807, the suit to charge the defendant with this debt was not brought till 1835, and was then brought by the surviving husband of the creditor as her administrator, she having lived in the vicinity of the party now charged as her debtor, till 1833. In this interval, it *375 does not appear that the defendant ever acknowledged the debt, or that it was ever demanded of him. It appears that he contested his liability for it at an early period ; and that his sister and her first husband during her first coverture, she during her widowhood, and she and her second husband, were all fully aware that it was so contested : that of the facts on which he relied to resist the payment of the bonds, he had one witness, at least, who was no longer living when this suit was brought; that his sister and her husbands, apprized of his denial of the justice of the claim, forbore to bring suit for twenty-eight years ; and that she, at some times, asserted her right to the bonds, and the defendant’s obligation to pay them, and, on other occasions, expressed her acquiescence in his objections to the payment of the bonds, and her willingness to forego any claim on *them; but none of these assertions of right, or declarations of acquiescence, were made in any communication between the parties. While the conflict between the purposes and views of the alleged creditor at different times, leaves the matter in some doubt as to what she might finally have done, the fact of actual forbearance is incontestable ; nor is there any evidence even of a demand. The parties were in antagonist positions for more than twenty years before this suit was brought, while one denied his obligation to pay, and the other forbore to assert her right to receive. There has been (if I may use the expression) an adversary possession of the money in controversy for more than twenty years ; and there has been a forbearance to bring suit for a right, recoverable in equity only, for that length of time, with full knowledge to the parties entitled and able to sue, that the right was denied : and the only question is, whether a court of equity will, after such delay, entertain the suit ? My impression is, that in such a case, according to the principles of numerous decisions, the activity of a court of equity ought not to be called forth. The inference which length of time per se might warrant, that the party intended to relinquish the claim, is in some degree strengthened by the evidence of avowals of that purpose at different times ; and time has deprived the defendant of the protection of such a purpose to relinquish the claim, by the death of the party to whom it is presumptively or by direct proof imputed. But I rest mainly on the proposition, that, after the lapse of more than twenty years, during which liability for the claim (for which there was no remedy but in equity) was, to the knowledge of the claimant, denied, and during which there was no impediment to a suit by the party entitled to sue for and recover the claim if it was just, and yet no suit was brought, the lapse of time, relied on as a defence, is effectual to repel the claim, *and to protect the defendant from the active agency of a court of : ' equity to subject him to it. Among many cases that might be cited, I refer to Marquis Cholmondeley v. Ld. Clinton, 2 Jac. & Walk. 
1, 184-192;Hoveden v. Ld. 2 Scho. & Lef. 607, 630 ; Elmendorf v. Taylor, 10 Wheat. 152; Miller v. M'Intyre, 6 Peters 61.
Decree affirmed.