Agnes McLean and others, *vs.* Jacob L. Barton and others.

Whether by section three of the Repealing act contained in the Revised Statutes, (R. S. 697,) First Circuit it was intended to continue in force the provisions of the acts of limitation, repealed by that act where the time had " begun to run, " or whether the time prescribed in the Revised Statutes was intended as the period at the expiration of which the suits be barred, *quare.*

McLean *vs.* Barton.

The statutes of limitations and lapse of time may be taken advantage of on demurrer.

Where the action was not commenced for upwards of twenty years after the right of action accrued and no disability or excuse for the delay pretended, and no new discovery of facts suggested, and both the person charged with committing the fraud, and his grantee were dead; the Court refused to sustain the suit, by reason of the lapse of time, and held that the case could not be aided by proof of facts which were not put in issue by the pleadings.

A Court of Equity will lend its aid to detect and redress a fraud, notwithstanding the lapse of time; but when the fraud is discovered, the parties must act upon that discovery within a reasonable time. The party seeking redress should not wait until all those who were cognizant of the transaction should have paid the debt of nature and until no one was left to deny or explain the allegations without giving any excuse for such delay.

The bill in this case stated that in 1816, Robert Smart, now deceased, obtained a deed of conveyance of lots number 61 and 62 in section three in the city of Detroit, representing himself to be the Assignee of Catharine Bailey, the Assignee of John Murphy, the Assignee of David McLean; to whom the lots had been granted by the Governor, and judges of the Territory of Michigan, acting as a Land Board, but that the deed making said grant was not delivered by the Governor and judges to said McLean.

The bill prayed for a conveyance of the lots to the complainants, the legal representatives of David McLean.

The defendants put in a general demurrer.

A. D. Fraser in support of the Demurrer.

*First.* Agnes McLean, the widow of David McLean, has no apparent interest in the controversy, nor any equity as against the defendants or any of them, and therefore a general Demurrer will lie to the whole bill. 3 *Paige* 336.

*Second.* Under this Demurrer we rely on the statute of limitations

as a bar to any relief. "From the earliest ages, Courts of Equity "have refused their aid to those who have for an unreasonable length "of time neglected to assert their claims, especially when the prop- "erty in controversy has passed to subsequent purchasers. Although ' statutes of limitations do not extend to suits in Chancery, yet Courts "of Equity will acknowledge their obligation. 6 *Cond. U. S. Rep·* 44, 47, 55. 5 *Peters,* 470. 6 *Id.* 71.

The bar from lapse of time need not be set up, by Demurrer, answer or plea but may be suggested at the hearing. 1 *Baldwin,* 418 419.

The statute of limitations may be urged as a bar of the remedy in the form of a Demurrer. 4 *Wash.* 639 ; 3 *P. Wm's,* 287 ; 2 *Mad. Ch.* 246.

In 1 *Peters* 360, *and* 3 *Peters* 44, the Court say, "that the statute "ought to receive such a construction as will effectuate the benefi- "cial objects which it intended to accomplish ; the security of titles "and the granting of possessions." 7 *John C. R.* 90 122.

And courts give effect to its regulations upon equitable titles. 5 *Mason* 112 ; 2 *Jac. & Wal.* 137, 191 ; 1 *Sch & Lef.* 413, 428.

This suit should have been instituted within ten years from the fifth of November, 1829. *Laws* 1833, *page* 408, 9.

Now if David McLean ever had any rights they accrued, as appears by the bill on the execution of the deed by the Governor and judges to Smart, dated fifth November, 1816. No new right accrued to the party subsequent to that time.

*Third.* It does not appear that McLean ever acquired title to the property, for it is expressly stated that the deed was never delivered.

*Fourth.* It is not shown by the bill that McLean was entitled to a deed for a lot in Detroit. *Laws* 1820, *page* 14.

BACKUS & SEAMAN, contra.

*First.* A demurrer must express the several causes of demurrer. *Mitfords Pe.* 3d Am. Ed. page 213 ; *Ordinance in Chy Ed. Beames* 77 and 175 ; *Story's Eq. Pl. page* 357 and 359, sec 455 and 457 *Equity, Draftsman,* 419 to 425 ; *Maddocks Ch.* 1st Ed. page 226.

*Second.* If a demurrer is general to the whole bill as in this case,

and there is any part either as to the relief or the discovery to which
defendant ought to answer, the demurrer being entire must be over
ruled. *Mitfords Pl. 3d Am Ed.* 214.

*Third.* A general demurrer as contradistinguished from a special demurrer is a demurrer for want of equity. *Story's Eq. Fl p* 357, *sec.* 455. All other demurrers are called special demurrers, to distinguish them from demurrers for want of equity, and the causes of demurrer must be particularly assigned.

Though all demurrers to *the whole bill* are called in legal parlance general demurrers, let them be ever so special in their nature to distinguish them from partial demurrers. *Mitfords Eq. Pl. by Jeremy,* 214. *Maddocks Ch.* 226.

*Fourth.* A demurrer for want of parties was put in, in the case of *Daveul vs. Fanning* 4 *John, Ch. R.* 201, and the cause of want of parties, specially assigned, see also, rule 29 of this court.

*Fifth.* The deed executed by the Governor and judges, and their assigning and designating the lots as lots to be deeded to McLean was in pursuance of the statute of the United States, and of his assignment to them, and also in full payment for his lot, and was therefore for a valuable consideration, and though not good in law for want of delivery, was good in equity to pass an equitable title to the premises to McLean. *Wadsworth vs. Wendell* 5 *John Ch.* 224.

*Sixth.* We have alleged fraud on the part of Smart, and brought notice of the fraud home to the defendants, which vitiates and renders null and void the defendants title. Equity grants relief not only against deeds, writings and solemn assurances, but also against judg. ments, and decrees obtained by fraud and imposition. *Reigal vs. Wood,* 1 *J. C. R.* 402 ; *John Digest, p* 245 ; *sec* 729, *decided by Chan. Kent; and Bansley vs. Powell,* 1 *Ves.* 120, *decided by Lord Hardwick; and Heirs of Ware vs. Henry Brush,* 1st *McLean's Rep.* 434 to 438.

*Seventh.* If the Laws of Michigan in 1816, as to married women and widows were not more barbarous than even the common law of England as modified by the statute of Distributions, of Charles, Mrs. McLean was entitled to a distributive share of her husbands estate, including the property in question. *See Tollers Laws of Ex'rs.* 371.

By the first section of the ordinance of Congress of 1787 she is entitled to a distributive share of one third of her husband's personal estate after paying debts, and a dower of one third of his real estate. See laws of 1833, page 23.

*Eighth.* The statute of limitations of November 6th, 1829, on which the defendants counsel rely to bar our action in ten years, was repealed April sixth, 1838. See Revised Statutes, page 693, which repeal took effect August 31st, 1838, the second section of the repealing act, R. S. page 697, substituted the Revised Statutes, and the limitation therein provided, R. S. page 573, section one, we come within the first section within the twenty-five years.

The defendants cannot bring this cause within any of the exceptions to the repealing act, pages 574 and 575, sections 7 and 8, but we come within the third section on page 697, or else under the old act of 1820 or some prior act.

We do not come within the saving clause of sec. 7, page 674 and 675, because our action was not barred on the 31st August, 1838, by the act of Nov. 5th, 1829.

The eighth section of Revised Statutes page 575, does not subject us to the act of November fifth, 1829, because by the express terms of that section, " all causes of action accruing previous to the thirty-first day of August, 1838, shall be determined by the law under which such right of action accrued," and our action accrued long prior to the passage of the act of November, 1839, or else it did not occur until the payment of the purchase money by Mrs. Campbell to Smart in 1835 or 1836.

According to said 8th section R. S. page 575, I suppose our rights must be decided according to the statutes in force when our cause of action accrued, which must have been when Smart entered under his deed, which bears date December 16th, 1816. He may not have entered until some years afterwards; when, does not appear.

In the State of Ohio by an oversight of the legislature, the statutes of limitations did not embrace actions of debt on simple contract previous to the act of 1824, so that you can to this day, by the construction of their statute, sue on a promissory note, or for work and labor, or goods sold previous to 1824 in an action of debt, and there

is no statute to bar the action. *Tupper* vs. *Tupper* 3d *Ohio Rep.* 389.
(*S. C. Ohio cond. Rep.* 615 616.)

The settled construction of statutes of limitation in Ohio is that no statute shall apply to causes of action which accrued previous to its passage. All such acts shall be prospective only—and all actions shall be barred only by the statutes in force at the time they accrued.

The case of *Chalmandely* vs. *Clinton* 2d *Jacobs & Walker* 191 *and* 192 was put expressly upon the statute of limitations of King James—see Lord Redesdales opinion, latter part on page 192. We do not deny the position that Courts of Equity will carry into effect statutes of limitation (though they do not expressly apply to them) in all cases where the statute would be a bar at law, if an action at law was brought for the same subject matter. The decisions in 2nd *Jacobs & Walker*, 191 *and* 192—7 *John Ch. Rep.* 114 *to* 126—6 *Cond U. S. Rep.* 44, 47, *and* 55—5 *Peters,* 470 ; *and* 6th *Peters* 71 3d *Peer Williams Cook* vs. *Amham,* are all put expressly upon the ground of the statute of limitations, and that the statute would be a bar to a recovery at law for the same subject matter.

A case cannot be found where mere lapse of time has been held a bar in equity, unless the lapse of time has been so great that the statute of limitations could be pleaded at law for the same subject matter or a court of law would presume an extinguishment of the claim. Such was the express decision in 3rd *Peer Williams* 287 ; and such seems to have been the grounds of the decision in all the cases, and particularly that in 7th *John Ch. Rep.* 118 *and* 122.

In the absence of all explaniatory or rebutting testimony, even a court of law will instruct a jury to presume a mortgage, judgment or bond, paid after the lapse of twenty years, and will go so far in such cases, after great lapse of time as to preserve a grant by deed or lease. 4 *J. C. R.* 7 ; *Johnsons Dig.* p 583 sec. 174, 176, 177 *and* 180. *Page* 230 *and* 231, *sec.* 572, 574, 584 *and* 586 ; *Sup. to John Dig.* p 311, *sec.* 160 *and* 164.

*Ninth.* If the statute were a clear bar, and could be pleaded as such, it is possible the defendants might take advantage of it by demurrer ; but they can take advantage of mere lapse of time, not coming within the statute of limitations only, on the hearing upon an-

First Circuit swer as evidence that the plaintiffs rights have been extinguished by
McLean   a conveyance.   14 *Peters* 152—*Mitfords Pl. by Jeremy.*
  *vs.*
Barton.         The lapse of time being presumptive evidence of the extinguish-
ment of the plaintiffs claims.   See the case of Livingston *vs.* Livings.
ton, 4 *J. C. R.* 287 ; *John Dig. page* 231, *sec.* 586.   Such presump-
tive evidence plaintiffs have a right to rebut, which they would be pre-
cluded from doing, if the lapse of time could be taken advantage of
on demurrer.   The demurrer also admits the plaintiffs claims and
rights as stated in the bill ; and the defendants are guilty of the in_
consistency of admitting the plaintiffs rights by the demurrer, and at
the same time insisting that the lapse of time is presumptive evidence
of an extinguishment of these very rights which are thus admitted.

     FRASER in reply.

     It is incontrovertible that the legislature by the provisions of the
Revised Statutes, intended to reserve to suitors the benefits of the stat-
utes of 1820 and 1829 and all rights accruing under them.   *Revised
Laws page* 575, *sec.* 7 *and* 8 ; *Laws of* 1833, 571 *sec.* 6 ; *Laws of*
1833, 408  9.

     A reference to the provisions in regard to personal actions clearly
manifest this intention.   *Revised Laws, page* 580, *sec.* 25, 27.

     And this view is fortified by the fact that the Revised Statutes are
positive in their operation upon this subject, except so far as the old
statutes are declared to be the governing rule as to past cases.

     In putting a construction upon the provisions of the Revised Stat-
utes, the court must compare all the parts of the statute, and the differ-
ent statutes in *pari martina* to ascertain the intention of the legisla-.
ture.   And even recur to the situation and history of the country to
ascertain the reason as well as the meaning of many of the provis-
ions of a statute law.   1 *Peter Dig.* 581, 579.

     It was clearly competent for the legislature to pass the act of 1829
now relied upon, and its provisions do not conflict with any constitu-
tional provision, but on the contrary, they are reasonable and proper,
expedient and just, and are fully sustained by the highest authorities.
8 *Mass.* 430 ; 2 *Gallis.* 141 ; 3 *Peters,* 290, 276 ; 5 *Id.,* 464 ; 3
*Id.* 54.

But independent of the statute of limitations which it is insisted, con-

stitutes a perfect bar here, this court will refuse its aid to those who have for an unreasonable length of time neglected to assert their rights especially when the property has passed to subsequent purchasers. 10 *Wheaton*, 152 ; 9 *Peters*, 416.

" This court " will not entertain stale or antiquated demands, nor encourage laches, and negligence. 1 *Story on Equity*, 503, *and Notes.*

There is no time fixed when it operates in equity. *Baldwin*, 419;. 2 *Sumner*, 212.

It appears by the bill that the deed was never delivered by the Governor and judges to the complainant's ancestor, (McLean,) and consequently no title vested in him in his lifetime. 5 *Mason*, 60 ; 12 *Wend.*, 107, 8 ; 6 *Cowen*, 619.

THE CHANCELLOR.—This bill is filed to obtain the conveyance of lots Nos. 61 and 62 in section 3 in the city of Detroit.

The bill alleges that the lots in question were granted to David McLean by the Governor and judges of the then Territory of Michigan, acting as a Land Board ; but that the deed making said grant was not delivered.

That Robert Smart, now deceased, in December 1816, obtained a deed of conveyance of the lots in question, representing himself as Assignee of Catharine Bailey, Assignee of John Murphy, Assignee of said David McLean.

It denies that McLean ever made any such assignment, and that the representations of said Smart to said Governor and judges were made to defraud them and to defraud the complainants. The first question raised under the demurrer is the statute of limitations.

The statute of the 5th November, 1829 required all actions of this kind to be commenced within ten years from the passage of the act.

This act was repealed by the Revised Statutes, the repeal to take effect on the 31st day of August, 1838.

The statute of the 15th May, 1820 required all suits of this character to be commenced within twenty years. The suit in this case was commenced on the 14th May, 1840.

The existing law, section 1st, part 3d, title 6, Revised Statutes, pro-

vides that " no person shall commence an action for the recovery of " any lands, nor make any entry thereupon unless within 20 years " after the right to make such entry, or bring such action first accrued " or within twenty-five years after he or those from by or under whom " he claims, shall have been seized or possessed of the premises, ex- " cept as hereinafter provided."

But by the 8th section of the same statute, it is provided that "where " the cause or right of action or entry shall have accrued before the " time when this chapter shall take effect as law, the same shall not " be affected by this chapter, but all such causes of actions shall be " determined by the law, under which such right of action accrued."

The last section of the repealing act provides that " in any case " where the limitation or period of time prescribed in any of the acts " hereby repealed, for the acquiring any right or the barring any " remedy, or for any other purposes shall have *begun to run*, and the " same or any similar limitation is prescribed in the Revised Statutes, " the time of limitation shall continue to run and shall have the like " effect as if the whole period had begun and ended under the ope- " ration of the Revised Statutes. "

Whether this section intended to continue in force the provisions of the acts of limitation thereby repealed, where the time had " begun to run, " or whether the time prescribed in the Revised Statutes was intended as the period at the expiration of which the suits shall be barred is perhaps doubtful.

What time of limitation shall *continue to run ?* I am inclined to the opinion from the whole of the provisions of the statutes, that the intention of the legislature was to preserve the benefit of the statutes of limitation, which were repealed. But whichever construction may be given will not from the view I have taken of the case, change the result.

Whatever right David McLean possessed accrued in 1809. All of his right and title, became vested in the present complaints, upon his decease, and before the deed from the Governor and judges to Smart in December, 1816. Their right of action then must have accrued at that time. No new or other right has since accrued.

There is no allegation of any disability or excuse made or attempted for the delay.

The second ground urged upon the hearing is the presumption ari-
sing from the lapse of time.

There seems to be now no doubt that the statute of limitations may
be taken advantage of, upon demurrer; but whether the same rule
holds in this case, there seems to have been much diversity of opinion.
One of the earliest cases upon the subject is the case of *Deloraine*
vs. *Brown*, 3 *Brown's, C. R.*, 635,    The authorities are there, collec-
ted in a note to the case made by Lord Reddesdale.    The same learned
Judge afterwards in commenting on this case in *Hoveden* vs. *Lord
Annesley*, 2 *Schoales & Lefroy*, 637, *says:*    " In the case of Lord
" Deloraine *vs.* Brown, an attempt was made to take advantage of
" the length of time by demurrer.    The decision of that case as re-
" ported by *Brown*, does not convey much satisfaction to my mind ;
" and perhaps the note which follows will account for the judgement
" of the court being delivered some what in a hurry.

"The first judgment as reported is hardly intelligible, and then there
" is an explanation given next day, it is however, rather contrary to
" what Lord Kenyon determined in Beckford *vs.* Close, which is ci-
" ted in that case.    This arose perhaps from Lord Thurlows not hav-
" ing, under the peculiar circumstances in which he stood, sufficiently
" considered that this was matter of the law of a Court of Equity.
" Lord Kenyon held that a demurrer to a bill, because it did not show
" a good title to redemption within twenty years, was a good demur-
" rer.    Why ? because it was a rule of the court that no redemption
" should be allowed after twenty years, and therefore the party
" should be put to bring his case within that rule.    Lord Thurlows opin-
" ion was given in a hurry :    and many cases were then pending, in
" which much injury might have arisen to the parties if the judg-
" ments had not then been given ; but it seems to me that Lord Ken-
" yon's opinion was perfectly tenable on Lord Thurlow's own quali-
" fication ; that is, that when a party does not by his bill, bring him-
" self within the rule of the court, the other party may by demurrer
" demand judgment, whether he ought to be compelled to answer.
" If the case of the plaintiff as stated in the bill will not entitle him
" to a decree, the judgment of the court may be required by demur-
" rer whether the defendant ought to be compelled to answer the bill ;
" that I take to be the matter of the law of a Court of Equity to be de-

" cided according to its rules and principles. However it is clear
" that in this case of Lord Deloraine *vs.* Brown, Lord Thurlow was
" anxious that his overruling the demurrer should not be considered as
" deciding upon the case; and the cause never came on again,
" Lord Deloraine being advised that the length of time was a bar. "

In the case of *Chalmondeley* vs. *Clinton*, 11 *Cond. Eng. C. Rep.*
68, it is held that where there has been an adverse possession not ac-
counted for by some disability for more than twenty years, a Court
of Equity ought not to interfere.

In the case of *Tuttle* vs. *Willson*, 1 *Ohio Rep.* 26, it is said, that,
" it is indeed, well settled, that a statute of limitations, will now be
" applied, in Equity where it would bar the claim at law.   1 *Story's*
" *Eq.* 502 ; 2 *Story's Eq.*, 735 ; 6 *Peters*, 66.   The complainant
" filed her petition in 1838, a period of *twenty-three* years having
" elapsed after her cause of action arose, and in our view, the stat-
" ute is a bar to her claim.   But if it were otherwise, the staleness
" of the demand would be fatal to its farther prosecution, and inde-
" pendent of the act of limitation, affords a complete defence.   Where
" rights are unreasonably neglected, the presumption is legitimate, of
" an intention to abandon them.   "Nothing," says Lord Camden in
" Smith *vs.* Clay, 3 *Brown's, Ch. Rep.*, 640, " can call forth this
" court into activity, but *conscience*, good faith and reasonable *dili-*
" *gence:* where these are wanting the court is passive, and does noth"
" ing.   Laches and neglect are always discountenanced, and there-
" fore, from the beginning of this jurisdiction, there was always a
" limitation of suit in this court.

"This language of Lord Camden is cited with approbation by the
" Supreme Court of the United States, 9 *Peters*, 416.   *In* 7 *Ohio,*
" *Rep.* 62, the same principle is also recognized by this court. "

Demurrers have been uniformly allowed to bills to redeem after the
lapse of 20 years.

In the case of Lord Annesley *vs,* Hoveden, before mentioned, Lord
Reddesdale says :

" This brings me to consider the case finally in another point of
' view, supposing the plaintiff might have had relief on the ground
,'of fraud, if he had pursued his title with due diligence, the answer
" is, it appears that the alleged fraud was discovered by the party at

" least so long ago, that in 1735 a bill was filed, imputing fraud, and " impeaching the transaction on the same ground. Therefore, the " position that fraud, is not within the statute, because it is a secret " thing, which cannot be discovered, is not applicable to this case ; " for the fraud imputed in this case is represented in the bill of 1735; " that is, it is there stated that the release was a release which the " party conceived he had a right to impeach, on the ground of fraud, " and for that purpose to obtain from the opposite party a discovery " of all the facts and circumstances demonstrating the fraud. This " was known to the person claiming in 1735. Therefore, whatever " right of action might have accrued on discovering any particulars " of the fraud different from what were apparent in 1726, must be ta- " ken to have accrued in 1735 ; but was not pursued in 1794, a peri- " od of near sixty years after the first bill filed. I hold it utterly im- " possible for the court to act in such a case. A Court of Equity " is not to impeach a transaction on the ground of fraud, where the " fact of the alleged fraud, was within the knowledge of the party " sixty years before. On the contrary, I think the rule has been so " laid down, that every right of action in equity that accrues to the " party, whatever it may be, must be acted upon at the utmost within " twenty years. "

That the presumption arising from lapse of time, may be taken advantage of upon demurrer, is settled also in the case of *Livingston* vs *Livingston*, 4 *J. C. R.* 299; there Chancellor Kent says : " The differ- " ence between this case and the one decided yesterday, is very ma- " terial ; here is a demurrer to the whole bill, and the great lapse of " time taken in support of it, whereas in the other case the defen- " dant, by his answer adverted to the covenants to pay and put his de- " fence on counter claims." And effect was given to this defence under the demurrer. The bar from lapse of time is a conclusion from acquiescence, an inference from facts ; which need not be set up by demurrer, answer or plea. 1 *Baldwin*, 418.

Where there are such conflicting authorities, I feel myself at liberty to adopt the rule that appears to me the most reasonable and convenient. What is the case now presented to the court ? Here has passed by a period of upwards of twenty-three years. No disability or excuse for this delay pretended ; no new discovery of fraud suggested.

The parties lie by, until as appears from the bill, Smart, the party charged with having committed the fraud, is dead. Campbell, his grantee, is also dead. No one is left to answer these charges. If the lapse of time ought to bar this stale claim, I see no reason or propriety in compelling these parties further to pursue this litigation. If any disabilities existed, it would have been easy to have stated them. If fraud has been recently discovered, it should have been so alleged.

And this allegation not having been made, the case cannot be aided by proof, for the proof to be admissible must be founded on some allegations in the bill and answer. 1 *LcLean's Rep.*, 489.

A Court of Equity will lend its aid to detect and redress a fraud, notwithstanding the lapse of time, but when the fraud is discovered, the parties must act upon that discovery within a reasonable time. The party seeking redress should not wait for a period of between twenty-three and twenty-four years, until all those who were cognizant of the transaction shall have paid the debt of nature, and no one is left to deny or explain the allegations, without giving any excuse for this delay.

Demurrer allowed.