## DANLEY VS. DANLEY, ET AL.

Bill against the heirs of the husband for assignment, of dower in several tracts of land claimed by one of the heirs as purchaser, thus:—as to a part of the land, under a contract with the father before coverture with the complainant; as to the residue, by purchase at tax sale after his death: *Held,* That the claim of dower was barred by lapse of time, more than ten years having elapsed since the death of the husband.

*Appeal from   Pulaski   Chancery   Court.*

Hon. HULRERT F. FAIRCHILD, Chancellor.

FOWLER and STILLWELL, for the appellant.

A feme covet is entitled to dower in an equity of redemption. 6 *John.* 290; 7 *Ib.* 278; 15 *Ib*; 319; 15 *Mass.* 278.

Limitation  is no bar to a claim of dower.   10  *Yerger*  340 ; 2 *G. & John.* 468; 4 *N. Hamp.* 108; 4 *Mass.* 388;  6  *Conn.* 462; 2 *Ib.* 126.

The right of dower could not be destroyed by a tax sale.   10 *Ohio* 157;  *Wright's  Ohio Rep.* 273.

[ S. H. HEMPSTEAD, WATKINS & GALLAGHER, contra.

The  equity  out of which the statute gives dower must be a perfect  equity.   *Crabb vs.  Pratt,* 15 *Ala.* 843.

An heir may claim an estate paramount to his ancestor, and to such claim the protection of limitations  will  attach.   B. F. Danley claimed by purchase.    7 *Wheat. R.* 59.

Hon. THOMAS JOHNSON, Special Judge.

This was a suit instituted on the chancery side of the Pulaski

circuit court, by Mary Ann Danley against James M. Danley and others, and afterwards transferred to the chancery court of the same county, under the authority of law. She alleges in her bill, that about the 22d day of January, A. D. 1843, she was married to James Danley of the county of Pulaski, and lived with him as his wife until he died, which was about the 16th of March, 1844; that at the time of her marriage, or afterwards, the said James in his life time, was seized and possessed of an estate of inheritance, and had been in the actual possession thereof for more than ten years before his death, exclusively and claiming them as his own absolute property during the whole of that time, of the following described tracts of land situated in said county, to wit: The west half of the west fractional half of section numbered thirty-four, containing about one hundred and twenty-nine acres, the south half of the south west quarter of section numbered twenty-seven, containing about eighty acres, and the east half of the south-east quarter of section numbered twenty eight, containing eighty acres, all in township two, north of range twelve west, whereon are situated the usual and sole dwelling house and family residence of said deceased, who died intestate, and extensive improvements and cultivated lands of the annual value of five hundred dollars; that she has never in any manner whatever, relinquished her right of dower, which still existed in its full force; that it has not been assigned to her, and that since the death of the said James she has not enjoyed or had the possession of any of said lands or in any manner whatever received any part of the rents, issues and profits arising therefrom; that the sons and daughters and heirs at law of the said deceased, are Christopher C. Danley, James M. Danley, Benjamin F. Danley, and William Danley, all of whom reside in Pulaski county, and Stephen H. Chism and Elizabeth his wife, formerly Elizabeth Danley, who reside in Scott county, and William A. Davis and Nancy M. his wife, formerly Nancy M. Danley, whose residence is unknown; that ever since the death of the said James, all of

the said lands have been in the possession of the said James
M. Danley, and of the other heirs at law of the said deceased,
who have received all of the rents, issues and profits arising
therefrom, and the benefits of the sole and exclusive use and
occupation thereof, and that she is well entitled to be endowed
of said lands to the extent of one-third part thereof, including
the mansion and dwelling house of the said deceased, for and
during her natural life, and to one-third part of the rents and
profits or annual value of the same from the time of the death
of the said James, in her own right absolutely; that she has
often applied to the defendants to set apart and assign her
dower to her and to account for said annual value in said lands,
but that they have utterly refused to comply with her request,
etc.   She then prays for process to bring in the defendants to
answer the allegations of her bill, and that a decree may be
rendered assigning and setting apart her dower in said lands,
and that an account may be taken of the rents, issues and pro-
fits, and annual value of said lands, and one-third of the same
be decreed to her absolutely, and for general relief, etc.   In
response to this bill Benjamin F. Danley filed his separate
answer, in which he admits that the complainant was married
to said James Danley, on, or about the 22d of January, 1843,
in said county, and lived with him until he died, which was
about the 16th of March, 1846, that he left surviving him the
complainant, his wife, and the persons mentioned in the bill, his
children and heirs at law, but denies that the complainant
thereby became entitled to dower in any of the lands mentioned
in the bill; that as to so much of the bill as relates to the west
half of the west fractional half of section No. 34, he says that
James Danley deceased contracted to purchase the same in the
year 1831 or 1832, of one William Trimble and agreed to pay
him therefor $1200, on time, and that Trimble executed to him
a bond conditioned to convey the same to him upon the full
payment of the purchase money, that about the year 1835, said
Danley paid to Trimble a part of the purchase money, from
$400 to $600, that no further payment was made, as he believes,

until about 1837, or 1838, when the defendant James M. Danley, and his brother, the said Christopher Columbus Danley, having means of their own in the hands of one James DeBaun, advanced to said James Danley between $400 and $600, and that the sum so advanced, he paid to Trimble, in part payment for said land, and that said money was so advanced for the purpose of enabling said James Danley to make a payment on said land. That said James Danley being somewhat embarrassed in his pecuniary affairs and unable to refund the money so advanced by James M. and Christopher, agreed to and did assign and transfer to James M. the bond executed by Trimble for the said land, and authorized and empowered him to obtain a deed from him therefor in his own name in payment of the money so advanced, the said James M. having accounted to and paid said Christopher C. for the portion so advanced by him; that on the 18th of May, 1845, and after the death of said James Danley, said James M. paid to Trimble about the sum of $210, the balance of the purchase money, including interest, and that Trimble and his wife on that day, executed and delivered to James M. an absolute deed of conveyance for said land, and that thereupon the said bond so assigned was canceled and surrendered up to Trimble, and that for the reason that the bond with the assignment thereon endorsed, had been canceled and surrendered up, he was unable to state the exact date of the assignment, but he avers that the assignment was made before the complainant intermarried with said James Danley, and so he denies that said James was seized of the last mentioned land, during the time that the complainant was his wife, or that she is or ever hath been in any manner entitled to dower therein. He further avers that said James M. has had the legal possession of said tract of land from the time he purchased the same, as stated above, up to the 24th of September, 1849, when he for the sum of three hundred dollars by deed conveyed the said tract, together with other tracts mentioned in the bill, to the defendant, and further, that James M. so held said tract during all that time adversely to all other persons. He further

denies that he has ever received any rents for any portion of the land described, over and above the amount paid by him for taxes thereon, and the necessary expenses for taking care of the same; that the houses and buildings erected on the tract first described, the others being wild and untenanted, were worthless and utterly in an untenantable condition; that the fences were rotten and good for nothing; and he further avers that since he purchased said lands from the said James M. he has held the same as his own property, and adversely to the claims of all persons whomsoever. He denies that the complainant is in any wise entitled to dower in the other tracts contained in the bill, or in either of them. · He admits that the said James was seized and possessed of the two tracts last mentioned, that is to say, the south half of the south west quarter of section 27, and the east half of the south east quarter of section 28, all in T. 2, R. 11, during his lifetime, and as he believes during his marriage with the complainant, but he avers, that on the 19th of April, 1847, (the same being the first day of the April term of the Pulaski circuit court,) the said two last tracts were offered for sale at the court house door of said county, between the legal hours of sale, and due notice having been given of the time and place of said sale, by William B. Borden, the then sheriff and collector of taxes for said county, and that the said two several tracts were then and there sold by him for the payment of the taxes due thereon, for the years 1845 and 1846, as well as the costs, penalties and charges that had occurred thereon, and that the said James M. then and there became the purchaser of said tracts and immediately paid the amount of his bid, and that said Borden, as said sheriff and collector, forthwith executed to said James M. a certificate of said purchase as required by law; and he further avers that said sale was in all respects legal and regular. And in further answering he says that the said James M. on the 24th of September, 1849, as before stated, sold, and by deed conveyed, and for the consideration therein mentioned, the said two last mentioned tracts bought by him from the sheriff and collector as

aforesaid, as well as the tract first mentioned, and that the said James M. thereupon transferred to him (the respondent) the certificate of the said sheriff, and he avers that the said James M. from the time of said purchase by him of said two several tracts, from said sheriff, up to the time he sold the same to him, and that he from the time of his purchase from the said James M. to the present time, have respectively held the same absolutely against all the world; and he further avers that after the sale of the said two tracts by the sheriff, for taxes, and the purchase of the same by the said James M. that is to say, on the 21st day of June, 1853, John C. Peay, as sheriff and collector of said county of Pulaski, and as the successor in office of said William B. Borden, executed to the said James M. and acknowledged in open court a deed in conformity and pursuant to the statute in such case made and provided to and for the said two several tracts, so sold and purchased as aforesaid; and he further and lastly avers, that if the complainant ever had any right of dower to any or all of the tracts mentioned, she has lost the same by lapse of time, non-claim, and that she is barred by the statute of limitations, etc., etc. With this answer certain exhibits were filed, showing a conveyance by Trimble and wife to James M. Danley, of " the upper half" of a tract of land lying on the Arkansas river, on the " north side above Little Rock, in said county of Pulaski," the lower half of which said tract formerly belonged to George W. Scott, now deceased, and which whole tract is designated on the public surveys as the west fractional half of section numbered thirty-four, in township two, " north of range twelve west;" a deed from James M. to the respondent of the same land described in the deed from Trimble and wife to the said James M. with the further description, it contains one hundred and twenty-nine acres, and also conveying the south west and south east quarters of the south west quarter of section twenty-seven, township two north, of range twelve west, containing eighty acres, and also the east half of the south east quarter of section twenty-eight, in township two, north of range twelve west, containing eighty acres.

The question raised upon the defence of limitation, is whether the statute in force at the death of the husband of the complainant, closes the door against relief, or whether the complainant is otherwise barred by lapse of time. In some of the States it has been decided, that their statutes of limitation are not to be applied to a suit for dower. But the difference in the adjudications evidently has grown out of the different phraseology of their statutes. The supreme courts of New Hampshire, in the case of *Bernard v. Edwards*, 4 *N. H. R. page* 109, held that their statute applied only to actions, entries and claims founded on some previous seizin or possession of the lands, tenements or hereditaments demanded, and that the time of limitation might be dated from such seizin or possession, and that dower was not within their statute. They also held that a limitation of dower cannot be dated from the seizin or possession of the demandant, because she cannot have either until dower has been assigned to her. They conceded, however, that there might be cases in which it would be proper to submit it to a jury to presume a release of a right of dower, from a long delay to demand it, under certain circumstances, after the right was known to have accrued. But that the plea in that case was no answer to the action, and therefore was adjudged insufficient. The defendant in that case, it will be perceived, relied solely upon the statute of limitations and lapse of time not having been set up outside of and independent of the statute, they did not determine that point. The statute of this State declares that no action for the recovery of any lands or tenements, or for the recovery of the possession thereof, shall be maintained unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of such suit. *Sec. 1st.* Chancellor Kent, in the case of *Jones vs. Powel* 6 *John. R. p.* 127, and the same general statute declares, that " no action for the recovery of any lands etc., shall be maintained etc., unless on a seizin or possession etc., either of the plaintiff, etc., or of the ancestor or predecessor of the plaintiff,

within 25 years before such action is brought, and that the general and sweeping language of that act, no less than the sound policy of it, would dictate the application of it to the action of dower, as well as to any other real action." That statute was substantially the same as ours, and had it not been for the act of 1806, of that State, it is obvious that the chancellor would have held dower to be within the limitations. That act provides, that the widow may, at any time, during her life, demand her dower. The statute of Ohio, however, contains no words of similar import. It enacts, that the widow shall be endowed of one full, equal third part of all the lands, tenements and real estate, of which her husband was seized, as an estate of inheritance, at any time during the coverture, but is silent as to the time within which the right shall be asserted. 1 *Chase's Laws*, 472. The act of 1810, provides, " That no person or persons shall, thereafter, sue, have or maintain any writ of ejectment, or other action, for the recovery of the possession, title or claim, of, to or for any land tenements or other hereditaments, but within twenty-one years, next after the right of such action or suits shall have accrued. Upon that state of the law, the supreme court of that State said, " it will be seen, " that it is not only an action of ejectment which is barred by " this statute, but every other action for the recovery of the " possession, title or claim to any land, *Chase's Laws* 656." The petition for dower is substantially, when prosecuted, a possessory action. Its object is the recovery of a private right, the possession of lands, in which the complainant has an estate for life, and would seem to be within the letter of the act. It is, however, a general rule, both in England and the United States, that statutes of limitations do not, *ex vi termini*, extend to suits in chancery, yet courts of equity in both countries certainly admit their obligation, and act not only in analogy, but in obedience to their provisions. It is, indeed, well settled, that a statute of limitations will now be applied, in equity, where it would bar the claim at law. 1 *Story, Eq.* 502; 2 *Story Eq.* 735; 6 *Peters* 66. Seamer died in 1815. The right to dower accrues

upon the death of the husband, 1 *Caine's R.* 159. The complainant filed her petition in 1838, a period of twenty-three years having elapsed after her cause of action arose, and, in our view, the statute is a bar to her claim. But if it were otherwise, the staleness of the demand would be fatal to its farther prosecution, and, independent of the act of limitations, afford a complete defence. Where rights are unreasonably neglected, the presumption is legitimate, of an intention to abandon them. Nothing, says Lord Camden, in *Smith vs. Clay,* 3 *Brown's Ch. Rep.* 640, can call forth this court into activity, but conscience, good faith and reasonable diligence, where these are wanting the court is passive and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation of suit in this court. This language of Lord Camden is cited with approbation by the supreme court of the United States. 9 *Peters* 414. In *Tuttle vs. Wilson,* 7 *Ohio Rep.* 62, the same principle is also recognized. In the case at bar, therefore, that court said, we have been led irresistibly to the conclusion, in both the aspects in which the defense has been considered, that the complainant's bill should be dismissed, with costs. The court of appeals of Maryland held that the statute of limitations was no bar in equity to a widow's claim for dower, in *Wells et al. vs. O'Beall* 2 *Gill and John. page* 474. The decision seems to be confined to the construction of the statute and is silent as to the effect of the lapse of time. It was held by the court of chancery of South Corolina, that a claim of dower would be barred by lapse of time. See *Boyle vs. Rowand,* 3 *Dess. Eq. Rep.* 556. The court of appeals of Kentucky in the case of *Rolls vs. Hughes and Hodges,* in 1st *Dana* 408, which was a suit for dower, said it is well settled that where the remedies are concurrent, and there is a legal bar, it applies equally in chancery, and where the remedy is exclusively in chancery, if there would have been a bar at law, provided the right had been a legal, not an equitable one, the suit in chancery will be liable to the same bar. But this is not the full extent to which the decisions have gone. An

attentive examination of the cases will show that the chancellor has adopted for himself a rule, in analogy to the limitation of the right of entry, which makes the lapse of twenty years, an universal bar to every species of demand pursued in this court, with the exception of express continuing trusts, and fraud. We do not propose to go through a detailed statement, or even citation of those cases. To do so at this day would be both tedious and unprofitable. We shall content ourselves with referring to the often before quoted language of Lord Redesdale,in the leading case of *Hovenden vs. Annessley*, 2 *Scho. and Lef.* "Every " new right of action in equity that accrues to a party, whatever " it may be, must be acted upon at the utmost within twenty years." This position has been recognized as sound and cited with approbation by this court, in the leading case of *Reed etc. vs. Bullock, Litt. Sel. Ca.,* 512; by the supreme court, in *Elmendorf vs. Taylor,* 10 *Whea.*; and by Chancellor Kent in *Kaine vs. Bloodgood,* 7 *John.* In *Reed vs. Bullock,* it was further said by that court, " that courts of equity from their first institution, " had discountenanced stale claims, and had always refused " their aid to those who had supinely and negligently slept upon " their titles." As soon as the statute of limitations of James 1st was made they eagerly adopted the limitations it prescribes, and it has long since become the settled rule of decisions in those courts. And as that statute has limited the time of making an entry upon land to twenty years, subject to certain exceptions, so courts of equity have invariably refused to sustain an equitable title where the cause of action accrued more than twenty years before suit brought, subject to the like exceptions. The result is that courts of equity not merely adopt the time prescribed by the statute in all cases where it applies expressly or by analogy, but even in those for which it has made no provision, on the general principle that vigilance and activity are necessary to call forth the extraordinary powers of the court, and that where a party has slept upon his claim for twenty years, good policy requires he should be left to his common remedy. Concurring entirely in the wisdom of the policy, that

dictated the rule, we are so far from feeling any disposition to disregard or evade it for any purpose, that we should have felt inclined to originate it, if it had never heretofore been adopted. The same principle is virtually adopted by this court, in the case of *Adams adm'r. of Spears, vs. Taylor*, 14 *Ark. R.* 62. It will be perceived that there is a seeming discrepancy in the adjudications upon this subject, but it will be found upon a close and critical examination that in every case where the effect of lapse of time has been directly passed upon outside of and independent of the statute, it has been held to be an effectual bar to the suit. With the principle asserted in those decisions we are perfectly satisfied, as we can perceive no good reason why widows, who are laboring under no legal disability, should be more highly favored in the courts of the country than other persons under like circumstances. It appears from the complainant's own showing, that the right, if any, accrued on the 16th of March, 1844, and that the suit was not commenced until the 6th of May, 1854. The defendant set up by way of defense the statute of limitations and lapse of time. The right claimed is in the land, and ten years being the time limited by the statute then in force for making an entry upon land, the question is whether the same period will not operate as a bar to the right claimed in this case. We consider the authorities referred to, to be perfectly conclusive of this question. Even admitting that the present suit does not come within the act of limitations, which is by no means clear, yet it is manifest that it is barred by lapse of time, as in analogy to the statute, as upon general principles of equity. Let the decree be affirmed.