## COOKINGHAM *vs.* LASHER.

Where one copartner makes a sale or disposition of the partnership property, in his own name, and without disclosing the name of his copartner or copartners having an interest therein, and at the same time makes a warranty of the soundness thereof, also in his own name, an action may be maintained against him for a breach of the contract of warranty, without joining his copartner, in the action.

A partner having made a contract in his own name, and not in the name of himself and his copartner, cannot be allowed to turn the other party to the contract over to a litigation with a stranger, simply because the latter has an interest in the property sold.

APPEAL from a judgment entered on the report of a referee. The opinion of the court details all the material facts. The referee reported in favor of the plaintiff for $150, besides costs.

*J. W. Elseffer,* for the plaintiff.

*J. Olney,* for the defendant.

*By the Court,* BROWN, J. This action is brought to recover damages for a breach of a contract of warranty, made

Cookingham *v.* Lasher.

upon an exchange of horses, at Rhinebeck, in March, 1859. The defendant, in his answer, sets up a general denial, and waives other defenses to the merits of the claim, which need not be particularly named, as they were disposed of by the referee and are not made a ground of this appeal. The defendant also alleged as a defense that at the time of the exchange of the horses, the defendant and one Daniel C. Deyeo were joint owners of the horses transferred and sold to the plaintiff, and that the contract of warranty, if any was made, was the joint contract of the defendant and Daniel C. Deyeo, who was then living and residing at Lexington in the state of New York, and should have been joined as a party with the defendant in the action, while said Deyeo and the defendant were at that time copartners in the business of buying, selling, trading and exchanging horses. The trial of the action was referred to Ambrose Wager, Esq. one of the counsellors of this court, who, after hearing the proofs, &c. of the parties, made a report in favor of the plaintiff, for the sum of $150 besides costs, upon which judgment was entered. The referee, amongst others, found the following facts: 1st. That the defendant and Daniel C. Deyeo, at the time of the sale and transfer of the horses to the plaintiff, were copartners in the business of buying, trading and selling horses, and were at the time joint owners of the horses sold and transferred to the plaintiff. 2d. That at the time of the transfer and sale the plaintiff had no knowledge or notice of the copartnership between the defendant and Deyoe, or that they were joint owners of the horses sold to the plaintiff. And 3d. That the defendant sold and transferred the horses to the plaintiff in his own name, and so also made the representations of warranty mentioned in the complaint. And he found, as his conclusions of law, that where one copartner makes a sale or disposition of the partnership property, in his own name, and without disclosing the name of his copartner or copartners having an interest therein, and at the same time makes a warranty of the soundness thereof,

also in his own name, an action may be maintained against him for a breach of the contract of warranty without joining his copartner in the action. · To this finding and conclusion of the referee the defendant excepted.

The power of one copartner to transact the whole business of the firm, whatever that may be, and consequently to bind his copartner to the same extent as himself, results from the contract of copartnership; for without such authority the business of the firm could not be effectively and successfully prosecuted. If that business is to buy and sell goods and property, and as goods and property are usually bought and sold on credit, any person who deals with the individual partner has a right to consider his acts as those of the company, whoever may compose it. If he buys on credit, the presumption is that the credit is given to the firm, and the firm are consequently liable to pay the debt thus contracted. A warranty of the title, on a sale of personal property, is implied as an incident of the sale, and so the power of one copartner to make an express warranty as to the quality or the quantity of the goods sold would be implied, as necessary and indispensable to the effectual exercise of his general power to act for and bind the firm. The power of one copartner to bind the firm of which he is a member, in all that relates to its legitimate business, is but another expression of the law of agency. The individual copartner is the agent for the firm, and acts for it within the scope of his authority, which is to be ascertained by reference to its particular business and the powers necessary to an effectual prosecution thereof. The case of *Van Keuren* v. *Parmelee*, (2 *Comst.* 524,) which overturned a rule long prevalent in this country and inherited from the English courts, rests upon the recognition of this law of agency in its application to copartners. It denied and repudiated the power of one copartner to rescue a claim from the operation of the statute of limitations by a promise made after the dissolution of the firm. Judge Bronson, in the opinion of the court, after a statement

Cookingham *v.* Lasher.

of the facts, says: "This leads to an inquiry concerning the principle on which each partner can bind his associates. And it is generally agreed it is the law of agency. Each partner, when acting within the scope of the partnership, is deemed to be the authorized agent of all his fellows. The authority is presumed from the nature and necessity of the case; for without it third persons would not be safe in dealing with one of the associates, and the business of the partnership could not be carried on with success. Now how long does this presumed agency exist? Clearly no longer than the necessity for it exists, and for most purposes the necessity ceases with the termination of the partnership." I refer to this principle for the purpose of using it in connection with another, which affects materially the theory of the defense in this action. The proof shows, and so the referee has found, that the contract of warranty was made by the defendant in his own name, and that he did not disclose to the plaintiff that he was acting for his firm, or that any other person had any concern or interest in the property sold to the plaintiff. If he intended to share the responsibility of what he was doing with another, he was bound to make that known at the time, and communicate to the purchaser the name or the names of the others who were parties to the contract. Having made the contract in his name, and not in the name of himself and copartner, he cannot be allowed to turn the plaintiff over to a litigation with a stranger, simply because the latter had an interest in the property sold. The plaintiff's contract was with him alone, and not with him in connection with another, and for the breach of it the plaintiff may look to him alone. "If a person would excuse himself from responsibility on the ground of agency, he must show that he disclosed his principal at the time of making the contract, and that he acted on his behalf, so as to enable the party with whom he deals to have recourse to his principal in case the agent had authority to bind him." (2 *Kent's Com.* 630.) "A person contracting as agent will be personally responsible

Cookingham v. Lasher.

when at the time of making the contract he does not disclose the fact of his agency, but he treats with the other as principal, and it follows irresistibly that credit is given to him on account of the contract. These are elementary principles, and show that the defendant cannot evade his personal liability to the plaintiff, nor compel him to bring in another person to divide the responsibility with him because the plaintiff contracted with him alone and not with him as the agent of a copartnership, of which he is one of several members. In order to bind the partnership in any contract with third persons, it is ordinarily necessary that it should be made in the name of the firm. And if made by one partner, in his own name only, it will ordinarily be binding upon himself and not upon the partnership. There are exceptions to this rule when the contract is made by one partner in his own name, for and on behalf of the partnership, or for the benefit thereof, and yet the firm will be bound thereby." (*Story on Partnership,* § 243.) "The non-joinder of a dormant partner, as co-defendant, cannot even be pleaded in abatement when the plaintiff has no means of knowing of the partnership. For if I deal with A. he cannot in reference to that transaction say there is a contract between him and B., of whom I know nothing; thus compelling me to be a joint creditor of those two whose joint property may be scarcely any thing, and not the sole creditor of the only man I know. If the creditor, at the time of the contract, was ignorant that his debtor had a dormant partner, he may at his option sue the debtor separately or jointly with the dormant partner. But if he was not ignorant of that fact, he should regularly make the dormant partner a co-defendant with the ostensible partner. If he does not, and the non-joinder is objected to, it will be left to the jury to say with what parties the contract was intended to be made." (*Collyer on Partnership,* § 719.) Numerous authorities are referred to in the notes, and particularly *DeMantort*

v. *Sanders*, (1 *Barn. & Adol.* 396.) The referee in this case has found expressly that the contract of warranty was intended to be made between the plaintiff and the defendant.

The judgment should be affirmed.

[KINGS GENERAL TERM, February 9, 1863. *Brown, Scrugham* and *Lott*, Justices.]