## Case No. 9,496.

METCALF v. OFFICER et al.

[5 Dill. 565.] [1]

Circuit Court, D. Iowa. 1879.

BANKRUPTCY — ADJUDICATION OF BANKRUPTCY AGAINST A PARTNERSHIP—NECESSARY PARTY —DORMANT PARTNER.

1. It is not essential to the validity of an adjudication of bankruptcy against a partnership that a secret or dormant partner should be made a defendant.

2. The firm property is bound by an adjudication made against the ostensible partners.

3. A dormant or secret partner is not a necessary defendant at law or in equity.

4. Effect of non-joinder of a joint party to a contract discussed.

[This was a suit by Henry H. Metcalf, assignee of the estate of A. Bernard, John G. Mead, and M. E. Mead, trading as A. Bernard & Co., against Thomas Officer and William H. M. Pusey, trading as Officer & Pusey. The defendants demur.]

A. B. & J. C. Cummings, for plaintiff.

C. C. Cole and N. M. Pusey, for defendants.

---

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

Before DILLON, Circuit Judge, and LOVE, District Judge.

LOVE, District Judge. This case is before the court upon the demurrer of the defendants to the plaintiff's petition. The plaintiff, who sues as assignee in bankruptcy, shows that the petition in bankruptcy was filed on the 1st of May, 1877, by certain creditors of A. Bernard & Co., against A. Bernard and John G. Mead as the members composing that firm, and that on the 13th day of May, 1877, they were duly adjudged bankrupts; that on the 5th day of May, 1877, the plaintiff was elected assignee of said estate of A. Bernard & Co., and received a conveyance of the same from the register under the order of the court; that thereafter, on the 12th day of October, 1877, a supplemental petition was filed in the court of bankruptcy by said creditors, alleging that M. E. Mead was a partner in said firm of A. Bernard & Co., and praying that she might be made a party and adjudged a bankrupt upon the original petition, and that such proceedings were had that she was, on the 19th day of November, 1877, made a party thereto and adjudged a bankrupt on said original petition as a member of said firm; that on the 24th day of January, 1878, an assignment was duly made, by order of the court, of all the estate that the bankrupts, or either of them, possessed on said 1st day of May, 1877. The plaintiff further states that about the 5th day of April, 1877, said firm of A. Bernard & Co. made a payment to defendants in the sum of $3,500, defendants being then creditors of said A. Bernard & Co. in said sum, and that said sum was paid under circumstances which made it a fraudulent preference under the bankrupt law.

The court having caused the papers in the original case to be certified for its inspection, finds it to be alleged in the supplemental petition, among other things, that the petitioning creditors were informed by both A. Bernard and John G. Mead, at the time of the purchasing of the goods which formed the basis of their claims, that said A. Bernard and John G. Mead were the persons composing said firm of A. Bernard & Co.; that they filed their petition in bankruptcy to put said partnership into bankruptcy under that belief; that, at the time of filing said creditors' petition, each of said petitioning creditors had been informed and believed that said firm of A. Bernard & Co., then carrying on business in Council Bluffs, Iowa, was composed of A. Bernard and John G. Mead; that each of said petitioning creditors continued in the belief that said A. Bernard and John G. Mead composed said firm until about the 27th day of September, 1877, when, upon the trial of a certain action brought by this plaintiff to recover assets claimed to belong to said estate, A. Bernard testified that Mrs. M. E. Mead, the wife of said John G. Mead, was a partner in said firm of A. Bernard &

Co., and that, until it so appeared by the testimony of said A. Bernard, each of said petitioning creditors was ignorant of the fact that Mrs. M. E. Mead was a member of said firm. It also appears by the original petition that the acts of bankruptcy were committed in the month of April, 1877, to-wit, on the 21st day of April, 1877, and at other times within the same month.

It is clear that the foregoing statements, taken together, amount to an allegation that Mrs. M. E. Mead was a dormant or secret partner of said firm, and that A. Bernard and John G. Mead were the ostensible partners; and this court will presume, after judgment, at least, that the district court, in which said supplemental petition was heard and determined, so found.

The object of the present suit is to compel Officer & Pusey, the defendants, to restore to the assignee the sum of money which they received from A. Bernard & Co., the bankrupts, in payment of the bankrupts' debt to them. It is claimed that the payment was an illegal preference, in fraud of the bankrupt law.

In support of this demurrer the defendants contend: (1) That a partnership can be put in bankruptcy only by proceedings against all the partners. (2) That the fact that there was a secret or unknown partner does not affect the question. (3) That the proceeding by supplemental petition was absolutely void, since common law governs proceedings in bankruptcy, and amendments are not allowed. (4) That the limitation prescribed by the bankrupt law ran till the amendment or supplemental petition was filed, which was after the expiration of the two months fixed by the amendment to that statute, and that, inasmuch as the amendment or supplemental petition was not filed until more than two months after the alleged acts of bankruptcy were committed, this action cannot be maintained.

Thus the question is whether or not it is essential to the validity of an adjudication of bankruptcy against a partnership that a secret or dormant member of the firm should be made a defendant. The adjudication ordinarily brings the individual as well as the partnership property, debts, and assets into bankruptcy to be administered, but this result follows the adjudication only where the individual members whose property is to be affected are served with process or duly notified by publication. But may not the partnership property, debts, and assets be brought into bankruptcy and bound by the adjudication by serving the ostensible partners only? Is it absolutely necessary that the petitioning creditors should, in order to reach the partnership property, bring before the court an unknown member of the firm, whose existence as such is kept a secret by the ostensible members? If so, the most serious inconvenience and confusion would follow as a consequence.

The petitioning creditors cannot, in the first instance, do what to them is impossible. They cannot make members of the firm who keep themselves out of view, and with whom they have made no contract, parties defendant to the petition; and this is by no fault of the petitioning creditors, but rather by that of the members of the firm, both secret and ostensible. The cause against the ostensible members proceeds to adjudication; the creditors meet, choose an assignee, and by the order of the court all of the partnership property, and all of the individual property of the ostensible members who are served, is conveyed to the assignee; the assignee takes possession of the property and assets, collects and pays debts, adjusts liens, sells and conveys property, and makes dividends. After all this, it turns out that there was a secret partner, whom the petitioning creditors, not knowing, did not serve. What follows, according to the doctrine of this demurrer? The adjudication was an absolute nullity. The adjudication was the sole fountain of authority for all that has been done in pursuance of it. The counsel for the defendants contend that there is no remedy but to set aside the adjudication and serve the secret members of the firm; and I suppose that if at some future stage of the proceedings another secret member should be discovered, it would be necessary to set aside the adjudication again and begin de novo. But how, in the meantime, are the confusion and mischief arising from the sale and conveyance of the property of the bankrupt by the assignee, and the administration generally by that officer, to be remedied? Upon this point the counsel have given us no light. It cannot, of course, be denied that the resulting mischief is the direct consequence of the misconduct of the ostensible partners, in first keeping the fact of there being another partner concealed, and in not, in the second place, pleading the existence of the secret partner in abatement.

Counsel, in order to justify a doctrine leading to such consequences, appeal to the analogies of the common law. I see, myself, no reason why a different rule as to parties in this respect should prevail in bankruptcy from that which obtains in equity and common law proceedings. What, then, is the rule at law and in equity as to the necessity of bringing in a secret partner in order to make a judgment valid as to the firm? It may be safely affirmed that it never was essential that a secret or dormant partner should be served in a proceeding at law or in equity. If any district court in bankruptcy has affirmed the contrary, it has simply mistaken the law, and it would have done well not to publish its opinion.

At common law the non-joinder of a party to a joint contract could be taken advantage of only by plea in abatement, in which it was incumbent on the defendant to give his adversary a better writ, as the phrase was—that is, it was necessary in the plea to name

the parties jointly liable and not included in the original writ. If the defendant failed to plead in abatement, he could not avail himself of the omission to make the joint obligor a party on the trial by moving for a non-suit, and the plaintiff was entitled to judgment. But if the plaintiff failed to make a joint contractor with himself a party plaintiff, the consequence was much more serious, for the defendant might, at the trial, in such case, move for a non-suit, and the plaintiff's action fail. Such was the law even as to ostensible parties to a joint contract. With respect to dormant or secret partners, it never was, at common law or in equity, necessary for the plaintiff to join them in the action. The law was not so unreasonable as to require the plaintiff to join in his suit a party defendant with whom he had no contract or privity whatever, and of whose existence he had no notice.

The true rule is now settled to be that if the plaintiff has no means of knowing the existence of the dormant partner's relation to the firm, the partner sued cannot plead in abatement the non-joinder of the dormant partner. De Mautort v. Saunders, 1 Barn. & Adol. 398; Ex parte Hodgkinson, 19 Ves. 294; Ex parte Norfolk, Id. 458; Ex parte Watson, Id. 462; Ex parte Matthews, 3 Ves. & B. 126; Baldney v. Ritchie, 1 Starkie, 338; Sylvester v. Smith, 9 Mass. 119; Cookingham v. Lasher, 38 Barb. 656; Bird v. McCoy, 22 Iowa, 549; T. Pars. Partn. 290, 291. If the plaintiff was unaware of the dormant partnership at the time of making the contract sued upon, he might or might not, at his election, join the dormant partner. Ex parte Hamper, 17 Ves. 412; Ex parte Liddel, 2 Rose, 36; Grellier v. Neale, 1 Peake, 146; Robinson v. Wilkinson, 3 Price, 538; Ex parte Layton, 6 Ves. 438; Hoare v. Dawes, 1 Doug. 371, 373; Wilson v. Wallace, 8 Serg. & R. 55; Page v. Brant, 18 Ill. 37; Cleveland v. Woodward, 15 Vt. 302; Blin v. Pierce, 20 Vt. 25; Hagar v. Stone, Id. 106.

The question really is with whom the contract was intended to be made. It would be a most strange doctrine to hold that a party should be compelled in an action on a contract to join one as defendant with whom he has no covenant whatever; but since a dormant partner participates in the profits, and is in fact a partner, a creditor of the firm may, at his election, hold him responsible, notwithstanding the fact of the want of privity of contract between them.

It was, moreover, the practice at common law to proceed by scire facias against a partner who, though liable, was not joined in the original action. Indeed, the plaintiff could not proceed otherwise. He could not sue the dormant partner without joining the ostensible partners, and he could not unite them in a new and independent action against the dormant partner, because he already had a judgment against them. The plaintiff's true course, therefore, was to proceed by scire facias on his judgment, in which he recited the previous proceedings and judgment, and averred the fact of dormant partnership and the consequent liability of the dormant partner, and prayed that he should be required to show cause why he should not be made a party to the judgment.

In the present case the writ of scire facias could not be employed. It is a common law writ wholly inapplicable to the original proceeding in bankruptcy. By analogy to it, however, the petitioning creditors in this case obtained leave to file a supplemental petition, stating the same facts and asking substantially the same relief. I have, myself, no doubt that in this way the secret partner was brought regularly into court and made a party to the adjudication. It is equally clear to my mind that all her effects and property were thus brought into bankruptcy to be administered. It does not, however, follow that third persons who were individual creditors of the secret partner, and who dealt with her as such, are to be affected injuriously by the delay in commencing the proceedings by supplemental petition to make her a party.

The supplemental petition was not filed until the two months had expired within which, by the provisions of the bankrupt law, it was necessary that it should be filed in order that the assignee might commence a suit to divest a third person of a fraudulent preference; and if this suit was an action by the assignee against an individual creditor of the dormant partner to impeach a payment to him out of the dormant partner's individual estate, I should, myself, strongly incline to the opinion that such individual creditor might successfully plead the limitation.

But this is not a suit to compel an individual creditor to restore a payment alleged to have been made to him out of the dormant partner's effects in fraud of the bankrupt law. This is a suit against a partnership creditor to compel him to repay to the assignee a sum of money which it is alleged the bankrupt firm paid him in fraud of the law. The proceeding to put the partnership into bankruptcy was commenced within the prescribed time. The limitation of the statute does not, therefore, apply to that proceeding. Both of the ostensible partners were served with process, and were regularly before the court. They had informed the petitioning creditors that they were the only members of the firm. The service upon the ostensible partners was, as we have seen, sufficient to put the firm into bankruptcy. The adjudication was strictly regular as to the firm. The firm was, to all intents and purposes, by a valid judgment, subjected to the orders of the court of bankruptcy. The fact that a subsequent petition was filed to bring in a dormant partner did not in the slightest degree invalidate the adjudication against the partnership. The utmost that can be said of the supplemental proceeding

is that it was irregular, erroneous, and insufficient to bring the dormant partner and her estate into bankruptcy. The ostensible members of the partnership could not complain of the error in the judgment under the supplemental petition. It was owing to their misrepresentations that the secret member was not made a party to the original petition. To allow them to conceal the existence of their secret partner, and then to defeat the action of the creditors by the plea that the adjudication was erroneous and void as to them, would be to countenance a direct fraud upon the creditors of the partnership.

There seems to be no solid ground whatever for the argument that the adjudication of bankruptcy against the partnership was not only erroneous, but null and void, because the secret partner was not originally made a party, and because she was subsequently brought into court by the supplemental petition.

The original petition in bankruptcy was filed within two months from the time when the acts of bankruptcy were committed. It was, therefore, in time to enable the assignee to sue a party who had obtained a fraudulent preference, to the prejudice of the creditors. But counsel insist that the filing of the original petition, without making all the partners, ostensible as well as dormant, defendants, was a void act, and that it was, therefore, wholly unavailable to the creditors. Now, it was a thing simply impossible for the petitioning creditors to make the secret partner a party until they discovered that she was a partner, and this they did not discover until it was too late. Why did they not make the discovery till after the expiration of the two months? Whose fault was it? It was the fault of the partners themselves. All of the partners by concealment, and the ostensible partners by express representations, led the petitioning creditors into the erroneous belief that the ostensible partners were the only partners.

Shall the defendants be permitted to take advantage of their own wrong, or at least of their own fault, and defeat altogether the remedy of the petitioning creditors by pleading a delay caused by their own misconduct? Demurrer overruled.

[Subsequently a motion was made for a new trial, which was denied. 2 Fed. 640.]