HENRY MILLER'S HEIRS AND DEVISEES, COMPLAINANTS AND APPELLANTS v. JACOB AND ISAAC M'INTYRE, APPELLEES.

A bill was filed in 1808 for the purpose of obtaining the legal title to certain lands in Kentucky, and afterwards new parties were made defendants in an amended bill filed in 1815. Until these parties had so become defendants, and parties to the bill, the suit cannot be considered as commenced against them. The statute of limitations will avail the new defendants at the period when the amended bill was filed; and they are not to be affected by the proceeding during the time they were strangers to it.

Where the statute of limitations is pleaded at law or in equity, and the plaintiff desires to bring himself within its savings, it would be proper for him in his replication, or by an amendment of his bill, to set forth the facts specially.

The adverse possession was taken in this case in the spring of 1788 or 1789. In the spring of 1796 the ancestor of the complainants died, and his heirs brought suit against the present defendants in 1815. Some of the complainants were not of full age in 1804. Unless the disability be shown to exist, so as to protect the right of the complainants, the effect of the statute on that ground cannot be avoided.

If an entry be made under a grant, and there is no adverse possession, the entry will be limited only by the grant, unless the contrary appear.

At least twenty-six years elapsed after the adverse possession was taken by the defendants, before suit was brought against them by the complainants, and nineteen years from the decease of their ancestor. The statute of limitations of Virginia was made the statute of Kentucky by adoption in 1792: if the adverse possession which had been held for several years commenced at that time, or when the constitution formed by Kentucky was sanctioned by congress, it would give a possession of about twenty-two years; eighteen or nineteen of which were subsequent to the decease of the complainants' ancestor. Upon these facts the statute of limitations of Kentucky is a bar to a claim of the land by the complainants.

The courts in Kentucky and elsewhere, by analogy, apply the statute of limitations in chancery, to bar an equitable right, when at law it would have operated against a grant. This principle has been well established and generally sanctioned in courts of equity.

At law the statute operates where the conflicting titles are adverse in their origin; and no reason is perceived against giving the statute the same effect in equity.

APPEAL from the circuit court of the United States for the district of Kentucky.

The facts and pleadings of the case are fully stated in the opinion of the court.

It was argued by Mr Doddridge and Mr Denny for the appellants, and by Mr Wickliffe and Mr Daniel for the appellees.

[Miller v. M'Intyre.]

Mr Justice M'LEAN delivered the opinion of the Court.

This cause was appealed from the decree of the circuit court of the United States for the district of Kentucky. The original bill was filed in May 1808, in which the complainants stated, that on the 10th of December 1782, their ancestor, Henry Miller, made an entry of one thousand six hundred and eighty-seven acres of land, which was surveyed the 9th of April 1804, and patented the 19th of July 1820. That the defendants were in possession of the land under said claims; and the bill prayed that they might be compelled to disclose their titles, and surrender the possession of the premises.

In June 1815, the complainants amended their bill, and, among other things, stated, that on the 19th of May 1780, Nicholas M'Intyre entered a thousand acres of land on the waters of the Licking, &c., and having caused the same to be surveyed, contrary to location, obtained a patent elder in date than the complainants. That this land was devised by Nicholas M'Intyre to his sons Isaac and Jacob; and that Isaac conveyed to John M'Intyre, who is made a defendant. Jacob M'Intyre, and several others, are also made defendants. In 1816, Jacob M'Intyre filed his answer, in which he admits the entry of his ancestor as stated by the complainants, and sets forth an amendment of the said entry, made on the 14th of December 1782. By this amendment, it seems, the entry was made to interfere with complainants' entry.

An amended answer was filed by Jacob M'Intyre in May 1822, in which he claims the benefit of the statute of limitations from an occupancy of the land more than twenty years before suit was brought. Isaac M'Intyre seems never to have been served with process, or made a defendant to the amended bill. This was deemed unnecessary; it is presumed, from the fact stated in the bill, that he had conveyed his interest to John M'Intyre.

In his answer, filed in December 1821, John M'Intyre states, that the legal title to no part of the thousand acres is vested in him; but that he holds a bond, executed by Nicholas M'Intyre, for a moiety of the said tract; and that a deed for the same had been executed to him by Isaac M'Intyre, but that it had never been recorded. He alleges, that an adverse possession of more than twenty years, by himself and those claiming under him, is a bar to the plaintiffs' right.

[Miller v. M'Intvre.]

The cause was twice appealed to the supreme court from the decrees of the circuit court; and on the second appeal, the decree dismissing the bill was reversed, on the ground, that, under the land law, the survey of the complainants was made in due time, and that the patent was legally issued. And the cause was remanded to the circuit court for further proceedings; and leave was given to the parties to take testimony. 2 Wheat. 316; 11 Wheat. 441. Additional testimony was taken, chiefly with the view of proving the possession of the defendants under the M'Intyre patent.

As the complainants' title was sustained by the decree of this court in 1826, the defendants do not attempt to impeach it, but rely exclusively on their possession.

In April 1792, Kentucky adopted a constitution, and she was admitted into the union as an independent state the ensuing session of congress.

By the first section of the schedule, which was adopted with the constitution, it is provided, "that all rights, actions, prosecutions, claims and contracts, as well of individuals as of bodies corporate, shall continue as if the said government had not been established."

The statute of limitations which was passed by the legislature of Kentucky on the 17th of December 1796, was a literal copy of the Virginia statute; which was in force before the entries now in controversy were made. This statute therefore operated upon the rights of the parties, while the district of Kentucky formed a part of the state of Virginia, and afterwards by the adoption of the convention. It was not repealed by the statute of 1796, but re-enacted in all its parts.

In the second section of this statute, it is provided, "that all writs, &c. upon any title heretofore accrued, or which may hereafter fall or accrue, shall be sued out within twenty years next after such title or cause of action accrued, and not afterwards; and that no person or persons who now hath, or have, or may hereafter have, any right or title of entry, into any lands, tenements, or hereditaments, shall make any entry, but within twenty years next after such right or title accrued; and such person shall be barred from any entry afterwards." "Provided, nevertheless, that if any person or persons, entitled to such writ or writs, or to such right or title of entry as aforesaid, shall be

[Miller v. M'Intyre.]

under age, &c. or not within the commonwealth at the time such right or title accrued or coming to them; every such person and his or her heirs shall and may, notwithstanding the said twenty years are or shall be expired, bring or maintain his action, or make his entry, within ten years next after such disabilities removed or death of the person so disabled, and not afterwards."

By Josiah M'Dowell, David Jamison, James Sonce, Michael Hornback, and other witnesses, it is satisfactorily proved, that possession was taken of the land in controversy under the M'Intyre grant, by the defendants, or persons claiming under them, in the spring of the year 1788 or 1789. The weight of testimony is in favour of the former period. It is also made to appear, that the possession was adverse to the complainants' title, and co-extensive with the limits of the patent. If an entry be made, under a grant, and there is no adverse possession, the entry will be limited only by the grant, unless the contrary appear.

Various reasons are assigned against the operation of the statute in this case.

It is insisted, that the amended bill, filed in 1815, by which the defendants were made parties to the bill, has relation to the commencement of the suit in 1808; and consequently, that the statute cannot bar, as its limitation had not then run.

Until the defendants were made parties to the bill, the suit cannot be considered as having been commenced against them. It would be a novel and unjust principle to make the defendants responsible for a proceeding of which they had no notice; and where a final decree in the case could not have prejudiced their rights.

Where the statute is pleaded at law or in equity, and the plaintiff desires to bring himself within its savings, it would be proper for him in his replication, or by an amendment of his bill, to set forth the facts specially. This has not been done in the present case; but as there are other grounds on which the decision may rest, this objection will not be further noticed.

The adverse possession was taken in this case in the spring of 1788 or 1789. In the spring of 1796 the ancestor of the complainants died, and his heirs brought suit against the pre-

[Miller v. M'Intyre.]

sent defendants in June 1815.   From some of the depositions
it appears that a part of the complainants were not of full age
in April 1804; but how soon afterwards this disability ceased,
is not proved.   Unless the disability be shown to .exist, so as
to protect the rights of the complainants, the effect of the statute,
on that ground, cannot .be avoided.

At least twenty-six years elapsed after the adverse possess-
.ion was taken by the defendants, before suit was brought
against them by the complainants; and nineteen years from
the decease of their ancestor.

As the statute of Virginia was made the statute of Kentucky
by adoption in 1792, if the adverse possession, which had
been held for several years, commenced at that time, or when
the constitution formed by Kentucky was sanctioned by con-
gress, it would give a possession of about twenty-two years:
eighteen or nineteen of which were subsequent to the decease
of the complainants' ancestor.

Under this state of facts, it is clear that the statute constitutes
a bar, unless it shall be shown not to operate against the com-
plainants' title.

As the limitation of the statute, both as to the twenty years'
adverse possession, and the ten years subsequent to the decease
of the complainants' ancestor, had run since 1793, before suit
was commenced, it is unnecessary to inquire what effect the
Virginia statute had upon the rights of the parties before it
was adopted by Kentucky.

It is earnestly contended that the statute does not run against
an equitable title, and consequently, that it cannot operate as a
bar in this case; as the legal title was not vested in the com-
plainants until the emanation of their patent in 1820.

On this ground the counsel seem chiefly to rely, and several
authorities are referred to in support of it.

In 4 Bibb, 372, the court say, it is a general rule that a court
of equity will not relieve against a possession with right, after
the lapse of twenty years; but they do not determine whether
this rule applies where the conflicting titles are adverse in
their origin.   2 Mar. 570; 1 Mar. 53, 506; 3 Mar. 146, are
cited to show that the statute does not run, except against a
grant.   This is undoubtedly the case at law, but a different
rule has been established in equity.   The courts in Kentucky

and elsewhere, by analogy, apply the statute in chancery to bar an equitable right; where at law it would have operated against a grant.

This principle has been so well established, and so generally sanctioned by courts of equity, that it can hardly be necessary to enter into an investigation of it.

At first the rule was controverted, and afterwards frequently evaded, on the ground of implied trusts; but the modern decisions have uniformly sustained the principle. This doctrine is ably discussed in the case of the Marquis of Cholmondely v. Lord Clinton, reported in 2 Jacob and Walker. In that case it is said, that "at all times, courts of equity have, upon general principles of their own, even where there was no statutable bar, refused relief to stale demands; where the party has slept upon his rights, and acquiesced for a great length of time."

At law, the statute operates where the conflicting titles are adverse in their origin; and no reason is perceived against giving the same effect to the statute in equity.

In the case of Elmendorf v. Taylor, 10 Wheat. 168, the chief justice, in giving the opinion of the court, says, "from the earliest ages courts of equity have refused their aid to those who have neglected, for an unreasonable length of time, to assert their claims; especially where the legal estate has been transferred to purchasers without notice." That "although the statutes of limitations do not, either in England or in these states, extend to suits in chancery, yet the courts in both countries have acknowledged their obligations." In referring to the case of Cholmondely v. Clinton, he says, "it was considered and treated by the court as a case of the highest importance; and the opinion was unequivocally expressed, that, both on principle and authority, the laches and non-claim of the rightful owner of an equitable estate for a period of twenty years (supposing it the case of one who must within that period have made his claim in a court of law, had it been a legal estate), under no disability, and where there has been no fraud, will constitute a bar to equitable relief, by analogy to the statute of limitations, if, during all that period, the possession has been held under a claim unequivocally adverse." This case was appealed to the house of lords, where the lord chancellor

[Miller v. M'Intyre.]

considered that twenty years constituted a bar; the possession being adverse. And Lord Redesdale declared that "they had always considered the provision in the statute of James," which is similar to the Kentucky statute under consideration, and "which applied to rights and titles of entry, in which the period of limitation was twenty years, as that by which they were bound; and it was that upon which they had constantly acted."

In the conclusion of the opinion, the chief justice says, "in all cases, where an adverse possession has continued for twenty years, it constitutes, in the opinion of this court, a complete bar in equity."

From the above authorities, it appears the rule is well settled, both in England and in this country, that effect will be given to the statute of limitation, in equity, the same as at law. And as in this case there could be no doubt, if the complainants' ancestor had held by grant at the time the adverse possession was taken, that the statute would have barred the right of entry; the same effect must be given to it in equity.

The decree of the circuit court, dismissing the bill, is affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel; on consideration whereof it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause, dismissing the bill of the complainants, be, and the same is hereby affirmed, with costs.