# UNITED STATES v. GORHAM.

## APPEAL FROM THE COURT OF CLAIMS.

No. 187. Argued January 28, 1897.— Decided February 15, 1897.

Under the Indian depredation act of March 3, 1891, c. 538, 26 Stat. 851, judgment may be rendered against the United States alone, when the tribe of Indians to which the depredators belong cannot be identified, and such inability is stated.

THE appellee herein filed his petition against the United States and the Comanche and Kiowa Indians in the Court of Claims on the 4th day of September, 1891, in which he claimed to recover damages for the destruction of his property on the 20th day of January, 1868, by the Comanche and Kiowa Indians, in amity with the United States, at Indian Creek, in Cooke County, Texas. The property destroyed consisted of horses, mares and colts, of the alleged value of $1390.

The government filed an answer to such petition, in which it denied each and every allegation therein contained. The case was duly tried before the court, which found as facts that the claimant was at the time of the loss of his property, and ever since has been, a citizen of the United States, and that in the year 1868 he was the owner of property described in his petition, and that it was of the total value of $1390; that it was destroyed or taken from him by Indians belonging to the Indian tribes, at the time in amity with the United States, and the depredation was without just cause or provocation on the part of claimant, and that it did not appear at the time of the depredation that any Indian troubles existed; that no part of the property included in the computation had been returned or paid for. Upon these findings the court decided as conclusions of law that the plaintiff was entitled to recover from the United States the value of the property, $1390; and that his petition as against the Comanche and Kiowas should be dismissed. Judgment was accordingly entered against the United States for the sum named and for

a dismissal against the Indians.    A motion by the United States for a new trial was overruled, and thereafter an appeal' was allowed to this court.    29 C. Cl. 97.

The appellant assigns for errors of fact:

(1.) That the court erred in finding that claimant's property was taken or destroyed by Indians belonging to Indian tribes. at the time in amity with the United States.

(2.) In finding that the depredation was committed without just cause or provocation on the part of the claimant or his agent.

(3.) In finding that it does not appear that any Indian troubles existed at the time of the depredation.

Errors of law are assigned :

(1.) That the court erred in its conclusion of law that the claimant should recover from the United States the sum of $1390; and —

(2.) It erred in entering judgment against the United States.

*Mr. Alexander Porter Morse* for appellants.    *Mr. Assistant Attorney General Howry* filed a brief for the same.

*Mr. John Wharton Clarke* for appellee.

MR. JUSTICE PECKHAM .delivered the opinion of the court.

There is here but a single question for this court to review, and that relates to the right of the Court of Claims to render judgment against the United States alone under the Indian depredation act where the tribe of Indians to which the depredators belong cannot be identified, and such inability is stated and judgment rendered against the United States only.

The act in question is entitled, " An act to provide for the adjudication and payment of claims arising from Indian depredations," approved March 3, 1891, c. 538, 26 Stat. 851.

Under that act jurisdiction is conferred upon the Court of Claims to inquire into and finally adjudicate, in the manner provided in the act, first: All claims for the property of citizens of the United States taken or destroyed by Indians

belonging to any band or tribe or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.

The second section of the act waives all questions of limitation as to the time and manner of presenting such claims, provided that no claim accruing prior to July 1, 1865, is to be considered by the court unless the claim shall be allowed or has been or is pending, prior to the passage of the act, before Congress or before the other officers named therein.

The third section provides that all claims shall be presented to the court by petition, setting forth the facts upon which such claims are based, "the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, *as near as may be*, the property lost or destroyed, and the value thereof, and any other facts connected with the transactions and material to the proper adjudication of the case involved."

The fourth section provides for service of the petition upon the Attorney General of the United States, and makes it his duty to appear and defend "the interests of the Government and of the Indians in the suit." It provides for the filing of a proper plea by the Attorney General, and that in case of his neglect to do so the claimant may proceed with the case, but he "shall not have judgment for his claim or for any part thereof unless he shall establish the same by proof satisfactory to the court."

The fifth section provides, among other things, "That the court shall determine in each case the value of the property taken or destroyed at the time and place of the loss or destruction, and, if possible, the tribe of Indians or other persons by whom the wrong was committed, and shall render judgment in favor of the claimant or claimants against the United States, *and against the tribes of Indians committing the wrong when such can be identified.*"

The sixth section provides that the amount of the judgment rendered against any tribe of Indians shall be charged against the tribe by which or by the members of which the court shall find that the depredation was committed, and shall be deducted

and paid in the following manner : " First, from annuities due said tribe from the United States; second, if no annuities are due or available, then from any other funds due said tribe from the United States, arising from the sale of their lands or otherwise; third, if no such funds are due or available, then from any appropriation for the benefit of said tribe other than appropriations for their current and necessary support, subsistence and education; and fourth, if no such annuity, fund or appropriation is. due or available, then the amount of the judgment shall be paid from the Treasury of the United States: *Provided*, That any amount so paid from the Treasury of the United States shall remain a charge against such tribe, and shall be deducted from any annuity, fund or appropriation hereinbefore designated which may hereafter become due from the United States to such tribe."

The eighth section provides " that immediately after the beginning of each session of Congress the Attorney General of the United States shall transmit to the Congress of the United States a list of all final judgments rendered in pur-suance of this act in favor of claimants and against the United States, and not paid as hereinbefore provided, which shall there-upon be appropriated for in the proper appropriation bills."

The tenth section provides for an appeal by the claimant or the United States or the tribe of Indians, or other party thereto interested in any proceeding brought under the provisions of the act.

The scheme of the act is to provide payment to the citizen for property destroyed under the circumstances stated in the first section, and where the Indians can be identified to make them, through the funds coming to them from the government, pay back to it the amount it pays by reason of the property so destroyed. We think the liability of the government to pay, upon proof of the facts set forth in the first section, was not intended to be dependent upon the ability of the claimant to identify the particular tribe of or the individual Indians who committed the depredations. If the identification could be made they were to repay the

government, but the indemnification of the citizen was not to be dependent upon that fact.

When this case was before the Court of Claims it received the very careful attention of that court, and scarcely anything can be added to its well-considered opinion delivered by Judge Nott in directing judgment against the United States and dismissing the petition against the Comanche and Kiowa Indians.

In conferring jurisdiction in this class of cases upon the Court of Claims, it will be seen that Congress conferred it in regard to all claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge. So long as the depredations were committed upon the property of citizens of the United States, and by Indians in amity with the government, without just cause, etc., jurisdiction and authority to inquire into and finally adjudicate upon such claims was granted to the court. This broad ground of jurisdiction would, unless circumscribed by the subsequent provision of the act, permit an adjudication against the United States alone. There is nothing in any other portion of the act which provides in terms for joining as co-defendants with the United States the tribes or bands of Indians by whom the alleged illegal acts were committed. The third section of the act merely provides for the contents of the petition, and by such section it is made the duty of the petitioner to state in his petition "the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, as near as may be," etc. This is for the obvious purpose of giving some notice to the government of the alleged facts upon which the claim is based so that the proper defence, if any exist, may be made to the claim.

Section four, among other things, grants the right to any Indian or Indians interested in the proceedings to appear and defend by an attorney employed by such Indian or Indians, with the approval of the Commissioner of Indian Affairs,

if he or they so choose to do; but if no such appearance is made, it still remains the primary duty of the Attorney General, under the provisions of the same fourth section, to appear and defend the interest of the government and of the Indians in the suit, and no claimant can have judgment for his claim or any part thereof unless he shall establish the same by proof satisfactory to the court.

Taking into consideration that, by the fifth section, it is the duty of the court to determine in each case, "if possible, the tribe of Indians or other persons by whom the wrong was committed, and to render judgment in favor of the claimant or claimants against the United States and against the tribe of Indians committing the wrong, when such can be identified," it may be fairly claimed that, reading all the provisions together, the act makes it necessary, when known, to join with the United States the Indians or tribe of Indians by whom the illegal acts are alleged or are supposed to have been committed. Although the fourth section provides for the defence of the claim by the law officer of the government under any circumstances, yet as the interest of the Indians is embraced in the inquiry before the court because of their liability to a judgment against them if identified and to a payment of that judgment out of the annuities or otherwise as provided for in the sixth section, it is proper to allow them to appear and defend also by their own attorney. But the fifth section provides for judgment in favor of claimant and against the United States in any event, where the property of a citizen has been destroyed under the circumstances provided in the statute, but only against the tribe of Indians committing the wrong "when such can be identified," and of course it follows that if they cannot be identified no judgment can go against them. The United States would then be left as alone responsible for the property destroyed provided the proofs were of the character mentioned in the first section of the act; that is the claimant would be bound to prove that he was a citizen of the United States at the time of the taking or destruction of his property; that it had been taken by Indians belonging to some band or tribe or

nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and that it had not been returned or paid for.

Unless it can be asserted that it is impossible to make out a cause of action for such destruction of property by the class of Indians mentioned in the first section, without identifying such class as is mentioned in the fifth section, we can see no objection to a recovery against the United States alone in this case. We do not think that it is impossible to prove facts of the nature set forth in the first section, although they may have occurred under such circumstances as to prevent identification of the particular tribe or band of Indians committing the illegal act. The circumstances of the case might show beyond any reasonable doubt that the property had been destroyed by Indians; that it was at the time so situated with regard to various bands of Indians, all of whom were in amity with the United States, as to make it impossible to identify the particular band to which the Indians belonged who committed the depredation, but that from the facts it could not be successfully questioned that the Indians of one or the other of these bands had committed the depredation. Under such circumstances we think the claimant would bring his cause within the provisions of the act in question. He would have proved that his property had been destroyed by Indians belonging to a band or tribe in amity with the United States, but which of several bands of that description he would be unable to identify. Consequently the judgment would go against the United States, but not against any particular band because of the failure of the proof.

We think after a careful examination of the whole act that the Court of Claims was right in entering judgment against the United States alone. The claimant having died pending the suit, the question as to the appointment and appearance of an administrator may be dealt with in the Court of Claims.

The judgment of that court is, therefore,

*Affirmed.*