Weldon, J.,
delivered the opinion of the court:
The claim in this case, amounting to the sum of $1,376.25, is made for the alleged destruction of beehives and other property belonging to the claimant by the defendant Indians in the year 1880 in San Diego County, Cal.
It is contended by counsel for the United States, first, that the Indians who are alleged to have committed the depredation did not belong to “ any band, tribe, or nation,” and, second, that the defendant Indians were at the time of the alleged depredation citizens of the United States; and that upon either ground of the contention no liability attaches to the United States.
If the first contention be true it is not necessary that the *351 second be considered. The statute giving the court jurisdiction provides:
“All claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States.” (1 Supp. R. S., 2d ed., p. 913.)
The Dieguenos Indians had at the time of the alleged depredation no affiliation with Indians having a band, tribal, or national organization. They were not like Geronimo’s, Victoria’s or Blackhawk’s band, as to tvhich latter band it was held that in order to constitute a band so as to be responsible it must have a continuity of existence, a persistent cohesion and be subject to the authority of a chief or commander. (Alred v. The United States, 36 C. Cls. R., 285.) There was no such organization among these Indians. They were of a certain blood, but had no authoritative organization. They were not a tribe, as they had no leader, chief, or chiefs, and no authority which had jurisdiction and control of them as Indians distinct from the community in which they lived. They inhabited a district of country near the Mexican line in the southern part of California, in the settled portion of that part of the State. In the report of the Department of Indian Affairs for the year 1879, the year preceding the alleged depredation, the Commissioner of Indian Affairs reports, under the head of “ Mission Indians,” that:
“ They are estimated in number about 3,000, and are scat - tered in small bands over San Diego, San Bernardino, and Los Angeles counties, earning a precarious livelihood by cultivating small patches of land and working for ranchmen and white settlers when opportunity offers. Many of them are now occupying, by sufferance, lands which their ancestors have cultivated from time immemorial and to which they supposed they had an indisputable right.”
The Commissioner called special attention to the report of Agent Lawson, of the Mission Agency, dated August 28, 1879, in which it is said:
“ The Indians under my charge, known as the Mission Indians, are composed of the following-named tribes, vizr Seranos, Digenes, San Luis Rey, and Coahuillas and Owon-gos. Their settlements are scattered over portions of San *352 Bernardino and San Diego counties, and chiefly in the mountain and desert districts embraced in a range hundreds of miles in extent. Here and there lands have been reserved for them, but their character is such that very little of it is of any practical use, and very few'comparatively are living on the land so reserved. * * *
“ The Mission Indians are all engaged in agricultural pursuits, either in the cultivation of the little fields they call their own, or in laboring for ranchmen in the vicinity of their villages. But, on account of the sparseness of white settlers in these mountain and desert districts and the consequent scarcity of labor, they are forced often to go from 50 to 100 miles to procure work. At some seasons of the year it is impossible for all to find employment, while at others, such as.in the sheep-shearing season, they find ample and remunerative employment and are eagerly sought for by the large ■ranchmen. They excel all others in this kind of labor. With few exceptions, the Mission Indians are industrious, having always maintained themselves by their own labor.”
In the year 1880, the year in which this depredation is alleged to have been committed, the Commissioner reports as follows:
“ The Mission Indians, as a class, are reported to be industrious, sustaining themselves by cultivating their little fields, or in laboring for ranchmen in the vicinity of their villages. * * * They do not ask for supplies. All they ask for is a reservation upon which they can .earn a subsistence for themselves and families.”
From what is said in these reports it tends to show that the Mission Indians of southern California were peaceful, industrious, and friendly. They lived in villages, cultivated the soil, and were engaged in useful manual labor when that could be procured. In many of their characteristics they were like the Pueblo Indians of New Mexico and Arizona. At the time the independence of Mexico was achieved, to wit, in 1821, it was the policy to make the civilized Indians a part of the body politic of the new Government of Mexico; and without in this case deciding whether these Indians are citizens of the United States, it is sufficient to say that their condition was that of not having an Indian organization — a distinctive entity as a tribe, band, or nation of Indians. The intent of the law is to make responsible as defendants the *353 United States, and a tribe, band, or nation of Indians under certain conditions, and if the Indian or Indians committing the alleged depredation have no connection with a tribe, band, or nation, no responsibility attaches to the United States or the alleged Indians under the statute of the courts’ jurisdiction. The primary liability is on the tribe, band, or nation who commit the depredation, and if no liability attaches to them because of their peculiar condition, no liability attaches to the United States.
The petition is therefore dismissed.