# UNITED STATES AND THE KIOWA INDIANS v. MARTINEZ.

### APPEAL FROM THE COURT OF CLAIMS.

No. 15. Argued October 21, 22, 1904.—Decided December 5, 1904.

In an action brought under the Indian Depredation Act of March, 3 1891, 26 Stat. 851, a tribe of Indians not originally named in the petition cannot be brought into the action by amended petition after the expiration of three years from the filing of the original petition in the Court of Claims.

THIS action was brought in the Court of Claims on October 24, 1891, to recover damages against the United States and the Ute tribe of Indians in the sum of fourteen hundred dollars, the value of certain sheep alleged to have been taken and destroyed or used in June, 1873, by the said Indians. The petition was filed under the provisions of the act of March 3, 1891, entitled "An act to provide for the adjudication and payment of claims arising from Indian depredations." 26 Stat. 851. On February 5, 1902, the Assistant Attorney General of the United States answered the allegations of the peti-

tion by a general denial. On November 4, 1902, the claimant filed a motion for leave to file an amended petition, charging the depredation to have been committed by the Kiowa Indians, which motion was allowed, and upon the same day the amended petition was filed. On November 5, 1902, the Assistant Attorney General, appearing on behalf of the United States and the Kiowa Indians, filed a plea to the amended petition, setting up that no action had been commenced against the Kiowa Indians within three years after the passage of the act of March 3, 1891. On November 11, 1902, this plea in bar was overruled, and, upon the general issue being pleaded and trial had, the court found as a matter of fact: At the time of the depredation the claimant's decedent was a citizen of the United States. In June, 1873, in Mora County, New Mexico, Indians belonging to the Kiowa tribe took and drove away property of the kind and character described in the petition, the property of claimant's decedent, which was reasonably worth the sum of six hundred and ninety dollars. At the time of said depredation defendant Indians were in amity with the United States.

As a conclusion of law the majority of the court decided that the claimant recover a judgment against the United States and the Kiowa Indians in the sum of six hundred and ninety dollars.

The defendants appealed to this court.

*Mr. Lincoln B. Smith* (*pro hac vice*), with whom *Mr. Assistant Attorney General Thompson* was on the brief, for the appellants:

A new party defendant cannot be brought in by amendment after the statute of limitations has run in his favor. The substitution of an additional party defendant is equivalent to the beginning of a new suit. *Miller* v. *McIntyre*, 6 Pet. 61; *Sicard's Lessee* v. *Davis*, 6 Pet. 124; *Crowe* v. *Nagle*, 86 Illinois, 437; *Dunphy* v. *Riddle*, 86 Illinois, 22; *Clark* v. *Manning*, 95 Illinois, 508. A supposed hardship cannot affect the decision

as statutes of limitations are arbitrary in all their operations. *Jones* v. *Lemon,* 26 W. Va. 629; *Kendall* v. *United States,* 107 U. S. 123; *Amy* v. *Watertown,* 130 U. S. 320; *Duran's Case,* 31 C. Cl. 353, distinguished. The objection of the Government is not a technical one. The tribe is a necessary party. *Graham* v. *United States,* 30 C. Cl. 318, distinguished, and see *Woolverton* v. *Nez Perces Indians,* 29 C. Cl. 107. As to the construction of the act and the words "as near as may be," etc., the court may look at the legislative history of the act. *Blake* v. *National Bank,* 23 Wall. 307. A depredation may be committed by Indians whom it is impossible to identify with any tribe and in such case the claimant may recover against the United States alone. *Gorham* v. *United States,* 29 C. Cl. 97; *S. C.,* 165 U. S. 316. But if the claimant fails to do his utmost to bring in the tribe and brings in the wrong one and does not correct the error until after the time specified in the statute has elapsed it is either by his fault or his misfortune that he is barred. The United States is liable as guarantor only and cannot he held where the primary defendant, being known, has not been proceeded against within the statutory time.

*Mr. William H. Robeson* for appellee:

The objection under the statute of limitations is technical, but the delay was caused by the Government's failure to plead within the proper time. *Duran's Case,* 31 C. Cl. 355. The tribe is not really a necessary party. *Kemp* v. *United States,* No. 4777 C. Cl. Amendments of this nature have from an early time been permitted. *Cowan's Case,* 5 C. Cl. 107; *Thomas's Case,* 15 C. Cl. 335. Judgment may be rendered against the United States alone when the tribe of Indians to which the depredators belonged cannot he identified. *Gorham* v. *United States,* 165 U. S. 316; *Woolverton* v. *United States,* 29 C. Cl. 107.

"As near as may be" as used in the act is complied with by the claimant who attempts to identify the tribe rather than

the one who simply avèrs the impossibility of doing so. In support of the *Duran Case; supra*, see *Garcia* v. *United States*, 37 C. Cl. 243; *Johnson* v. *United States*, 160 U. S. 546, 552. Also see *Dykes* v. *United States*, No. 10,556 C. Cl.

To deny these claimants their remedy and to award it to others suffering during the same Indian attack, because the others guessed the tribe better, would be unjust and not what Congress intended.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

This claim arises under the Indian Depredation Act of March 3, 1891, 26 Stat. 851, and presents the question whether, after the expiration of three years from the filing of the petition in the Court of Claims, a tribe of Indians, not originally named in the petition, can be brought into the action by amended petition with a view to proceeding against such tribe to judgment. The record discloses that the original petition was filed on October 24, 1891; the amended petition on November 4, 1902. The Attorney General filed a plea setting up the bar of the statute, which plea was overruled, and thereafter, upon issue joined and testimony taken, judgment was rendered against the tribe of Indians so brought in by the amended petition.

The act in question was before this court in *United States* v. *Gorham*, 165 U. S. 316, and in that case it was held that, where the Indian tribe cannot be identified, a judgment for the amount of the claim can be rendered against the United States. In the opinion of the court in that case the act was analyzed and its various sections construed, and it only remains to consider so much of the act and its purposes as will lead to a solution of the question now under consideration.

The provisions of the first section of the act are positive, that all claims existing at the time of the taking of effect of the act shall be presented to the court by petition, as therein

provided, within three years after the passage of the act, or be forever barred. This section, by itself considered, would seem to conclude the right of the petitioner to bring in a new party to the proceeding after the expiration of three years in such wise as to preclude the right to rely upon the bar of the statute. For obvious reasons, a party brought into court by an amendment, and who has for the first time an opportunity to make defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court. *Miller* v. *McIntyre*, 6 Pet. 61. Conceding this proposition as applied to ordinary actions, it is urged that this proceeding is so peculiar in character as to take it out of the general rule. Section 3 of the act provides:

"That all claims shall be presented to the court by petition setting forth in ordinary and concise language, without unnecessary repetition, the facts upon which such claims are based, the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, as near as may be, the property lost or destroyed and the value thereof, and any other facts connected with the transactions and material to the proper adjudication of the case involved."

The fifth section of the statute provides:

"That the court shall determine in each case the value of the property taken or destroyed at the time and place of the loss or destruction, and, if possible, the tribe of Indians or other persons by whom the wrong was committed, and shall render judgment in favor of the claimant or claimants against the United States and against the tribe of Indians committing the wrong, when such can be identified."

Section 4 provides for service upon the Attorney General, whose duty it is to appear and defend for both the interests of the Government and the Indians, and giving to any Indian or Indians interested in the proceedings the right to appear and defend by an attorney employed with the approval of the Commissioner of Indian Affairs. By the sixth section the

amount of the judgment is charged against the tribe by which or the members of which the depredation was committed, and if no annuity, fund or appropriation is available as provided, the judgment is to be paid from the Treasury of the United States, to remain a charge against the tribe, and to be deducted from any annuity, fund or appropriation thereafter due from the United States to such tribe. It is contended that inasmuch as the Indian tribes are not necessary parties to the proceeding and are not required to be served with process except so far as the notice to the Attorney General is such service, and are only to be described "as near as may be," they may be brought in at any time before judgment, whenever such tribe "can be identified," as set forth in the fifth section of the act. The reasons for this conclusion are fully set forth in the opinion of the Court of Claims in *Duran* v. *United States et al.*, 31 C. Cl. 353. But we are unable to concur in the conclusions therein reached. In our view, the act provides for a recovery of depredation claims in two classes of cases: The one where the persons, classes of persons, tribe or tribes or band of Indians cannot be identified, in which event the United States may be held liable upon proof complying with other terms of the act, though failing to identify the particular depredators; the other, where the persons or tribe described in the act can be identified, in which event they must be named in the petition, and the judgment will go against the United States and the tribe committing the wrong, to be satisfied primarily out of the funds of the Indians. As was said in the *Gorham* case, *supra:* "It may be fairly claimed that, reading all the provisions together, the act makes it necessary, when known, to join with the United States the Indians or tribe of Indians by whom the illegal acts are alleged or are supposed to have been committed."

Whichever form the action takes it must be brought within three years after the passage of the act, as provided by the first section. In requiring the band or tribe of Indians to be described as near as may be, it is the purpose of the act to

require such tribe primarily liable for the injury to be brought before the court, when they can be identified for the purpose of the judgment authorized in the fifth section. All the sections are to be read together to effectuate the purpose of the law, and when the tribe "can be identified" it must be described as near as may be, that is, with reasonable accuracy, sufficiently identifying the party for the purposes of the action and judgment, resorting to the liability of the United States alone only in cases where the offending parties cannot be identified. The claimant under the statute has three years for the purpose of investigating his cause of action, and, in cases where it can be done, identifying the tribe sufficiently for the purposes of pleading and judgment against both the United States and the Indian tribe, or, in the alternative, proceeding against the United States alone. It is true that the act does not in terms provide for service upon the Indian tribes, their agents or attorneys, and the Attorney General is required to appear for them as well as for the United States. Of this provision, Mr. Justice Peckham, speaking for the court in the *Gorham* case (*supra*) said: "Although the fourth section provides for the defense of the claim by the law officer of the Government under any circumstances, yet as the interest of the Indians is embraced in the inquiry before the court because of their liability to a judgment against them if identified and to a payment of that judgment out of the annuities or otherwise as provided in the sixth section, it is proper to allow them to appear and defend also by their own attorney." When brought into court they may give by special counsel more careful attention to their particular defense than could be given by the law officer of the Government charged with the defense of thousands of similar claims. But it is said that the Attorney General, by failing to promptly raise by plea the defense of misjoinder, is quite as much in fault as the petitioner in permitting more than three years to elapse before the new party is brought in, and it is said that at the common law this objection could only be raised by such plea season-

ably interposed. At common law, where it was sought to bring in another party jointly liable, a plea by the defendant setting forth the non-joinder, and giving the name of such party, was the proper method of procedure. 3 Chitty on Pleading, 901, and notes. But such is not the present case. The original petition charged positively that the depredation was committed by the Ute Indians. It was sufficient for the Attorney General to plead the general issue to put the plaintiff upon proof of his allegations. It is said that eleven thousand of these cases have been begun, and it is not to be presumed that the Attorney General would know the facts of each case, and be in possession of information to fulfill the requisite of a good plea and furnish the name of the party to be impleaded. It was for the plaintiff to make such investigation as would warrant the beginning of the action against the proper tribe, or against the United States alone, averring that the particular tribe could not be identified.

It is further insisted that it is the purpose of the act, as provided for in the fifth section, to require the judgment to be rendered against the Indian tribe if it can be identified at any time before judgment, and that this construction is required to protect the interests of the United States. But we think this section should be read in connection with the other sections of the act, and the manifest purpose is to join in the petition when it can be identified, the tribe by whom the depredation was committed, and to limit the presentation of the claim to three years from the passage of the act. If this be not so the Indians may be made parties to the proceeding and judgment without being brought into court in any manner until years after the alleged wrong was committed, and when it may be impossible, by reason of the lapse of time or the death or disappearance of witnesses, to make adequate defense. The construction herein put upon the statute will give to the three years' limitation the effect of other statutes of limitation and will, in our judgment, best effectuate the purpose of the act. This act is extremely liberal in permitting

presentation of claims for Indian depredations. All limitations are swept away except the requirement as to the time of filing the petition. In the present case the depredation is alleged to have been committed eighteen years before the action was commenced. Under these liberal provisions we think it was the purpose of the law to require parties to be duly prosecuted within the three years allowed for the filing of petitions, and the liberality of the act should not be extended by construction. As the case was prosecuted against the wrong tribe until after the three years had expired, it cannot be maintained against the Indians sought to be brought in by the amendment, nor can it be sustained against the United States, which is liable by itself only in cases where the depredating Indians or other persons are unknown.

> *It follows that the judgment of the Court of Claims must be reversed and the petition directed to be dismissed, and it is so ordered.*

MR. JUSTICE WHITE, with whom concurs MR. JUSTICE McKENNA, dissenting.

Under the Indian depredation act of March 3, 1891, the United States was sued by one Gorham in the Court of Claims, and it was averred in the petition that the damage complained of had been inflicted by the Comanche and Kiowa tribes of Indians, who were in amity with the United States. After hearing, the Court of Claims, finding it to be established by the proof that the loss complained of had been occasioned by Indians in amity with the United States, but that the proof did not show that the Comanche and Kiowa tribes were the wrongdoers, nevertheless, without any amendment of the petition, rendered a judgment solely against the United States. The action of the Court of Claims was sustained by this court in *United States* v. *Gorham*, 165 U. S. 316.

In considering the power conferred by the statute it was said (p. 320):

"In conferring jurisdiction in this class of cases upon the Court of Claims, it will be seen that Congress conferred it in regard to all claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge. So long as the depredations were committed upon the property of citizens of the United States, and by Indians in amity with the government, without just cause, etc., jurisdiction and authority to inquire into and finally adjudicate upon such claims was granted to the court. This broad ground of jurisdiction would, unless circumscribed by the subsequent provision of the act, permit an adjudication against the United States alone. There is nothing in any other portion of the act which provides in terms for joining as co-defendants with the United States the tribes or bands of Indians by whom the alleged illegal acts were committed. The third section of the act merely provides for the contents of the petition, and by such section it is made the duty of the petitioner to state in his petition 'the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, as near as may be,' etc. This is for the obvious purpose of giving some notice to the government of the alleged facts upon which the claim is based so that the proper defence, if any exists, may be made to the claim."

Again, after pointing out that the statute made it "the duty of the court to determine in each case, 'if possible, the tribe of Indians or other persons by whom the wrong was committed, and to render judgment in favor of the claimant or claimants against the United States and against the tribe of Indians committing the wrong, when such can be identified,'" it was observed (p. 321):

"But the fifth section provides for judgment in favor of claimant and against the United States in any event, where the property of a citizen has been destroyed under the circumstances provided in the statute, but only against the tribe

of Indians committing the wrong 'when such can be identified,' and of course it follows that if they cannot be identified no judgment can go against them.   The United States would then be left as alone responsible for the property destroyed provided the proofs were of the character mentioned in the first section of the act; that is the claimant would be bound to prove that he was a citizen of the United States at the time of the taking or destruction of his property; that it had been taken by Indians belonging to some band or tribe or nation in amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and that it had not been returned or paid for."

To my mind this decision clearly establishes that under the act of Congress the Indian tribe by whom the depredation was committed was not an essential party to give the court jurisdiction over the claim.   This conclusion, it seems to me, is inevitable from the ruling that, although it was alleged in the petition that a particular tribe was the wrongdoer, it was competent for the court to conform to the proof and render a judgment against the United States in a case where the proof did not establish the truth of the averment as to the tribe committing the injury, if only it was shown that the wrong complained of must have been committed by some Indian tribe which was in amity with the United States.   Now, the question on this record is simply whether a petitioner who has alleged that the wrong was committed by a particular tribe can, after the three years' limitation, amend by stating another and different tribe as the wrongdoer.   It is decided that such amendment cannot be allowed, because to allow it would amount to a fatal departure, that is, the substitution of a new and wholly different cause of action.

Consistently with the ruling previously made, my mind cannot assent to this conclusion.   To adopt it without specifically overruling the *Gorham* case, it seems to me, is to declare on the one hand that it is not essential to prove the allegation that the wrong was committed by a particular tribe, and on

the other hand to say that the allegations as to the tribe committing the wrong were essential to the cause of action. That is to declare that a particular allegation is at the same time both essential and non-essential—essential to be alleged, but not essential to be proved.

As it is considered by me that the *Gorham* case is conclusive of this, and as the opinion now announced does not purport to overrule that case, it is not necessary for me to enter into a statement of my reasons for believing that, even if that case did not exist, the construction now given to the statute is not only repugnant to its text, but conflicts both with the rights of individual claimants and those of the United States, as shown by the purpose and spirit of the act.

I therefore dissent.