Howry, Judge,
delivered the opinion of the court:
This is a California claim under the Indian depredation act of March 3, 1891 (26 Stat., 851). The petition is against the United States and the Klamath Indians, and there are two defenses. The first of these relates to the change in the name of the tribe charged from the Klamath Indians to the Lower Klamath Indians or Klamath River Indians. Defendants say that no relation existed between the Klamath tribe of Indians and the Indians living on the lower Klamath River, who are the real defendants and who are proven to have committed the depredations. Because of this it is contended that no judgment can be rendered in favor of the claimant, inasmuch as the Klamath tribe did not commit the depredations and the Indians of the lower Klamath River were not brought into the case until the amended petition was filed, which was after the period fixed by statute for instituting proceedings. Inasmuch as a new suit was barred by statute it is argued that the Indians living on the lower Klamath River are exempted from being-made or treated as defendants by amendment in a suit already commenced.
In United States and the Kiowas v. Martinez (195 U. S., 469) it was held by a divided court that in an action brought under the Indian depredation act of March 3, 1891, supra, a tribe of Indians not originally named in the petition could not be brought into the action by amended petition after the expiration of three years from the filing of the original *364 petition in the Court of Claims. There the action was instituted at the outset to recover damages against the United States and the Ute tribe of Indians, and after the time for bringing suit an amended petition was filed charging the depredation to have been committed by the Kiowa Indians. The majority of this court decided that the claimant was entitled to recover, but upon appeal the Supreme Court likewise divided, but the majority there directed the petition to be dismissed, because the action had not been commenced against the proper tribe within three years. This case is different. Two tribes of Indians bore the name of Klamath Indians, not with reference to any ethnological ancestry, but rather from circumstances growing out of their location. One body lived at Klamath Lake, Oregon, and another body was located along the Klamath Liver and were known as Lower Klamaths, or Klamath Eiver Indians. We are of opinion that the general description of Klamath Indians would warrant a specific designation in the proof as to which of the Klamath Indians were intended to be sued. The findings establish two organizations of Klamaths and the pleadings contain a sufficient description to permit the entry of judgment against the Lower Kla-maths, or Klamath Eiver Indians, under the proof of the commission of the depredation by them. Accordingly, we hold that the plaintiff has a right to proceed against the depredators. Graham v. United States et al. (30 C. Cls., 318).
The other defense presents the question whether the Indians living on the lower Klamath Eiver were a “ tribe, band, or nation of Indians ” within the meaning of the act of March 3, 1891. The act provides for this court to finally adjudicate all claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation in amity with the United States without just cause or provocation on the part of the owner or agent in charge and not returned or paid for. If no annuities of the tribe are available, then the amount of the judgment where liability is established is directed to be paid by the United States, but to remain a charge against the tribe upon which the claim is made and proved. In support of this defense *365 we are referred to the case of Bell v. United States and Die-guenos Indians (39 C. Cls. R., 350). It was there decided that the defendant Indians at the time of the depredation had no affiliation with an Indian band or tribe and no organization of their own, and that if Indians committing the thefts had no connection with a tribe, band, or nation no responsibility attached to the United States and the court was without jurisdiction.
In some respects the- present case is like that, but in other respects materially different. Like the other Mission Indians of California, the tribe made defendants in the Bell case was scattered over a number of counties, earning a precarious livelihood by cultivating small patches of land and working for ranchers and white settlers when opportunity offered. Many of them occupied by sufferance lands ivhich their ancestors had cultivated, but their settlements were scattered over hundreds of miles and they were without specific reservations, and were never recognized by the 'United States as wards of the Government. Defendants there were in fact a part of a body of rod men, all of whom were known as “ Mission Indians,” composed of five distinct tribes in their entirety. Mission Indians were all engaged in agricultural pursuits and with few exceptions self-sustaining, and never asked for supplies nor furnished any. In many of their characteristics they were like the Pueblos of New Mexico and Arizona, and when the independence of Mexico was achieved in 1821 it was the policy of that government to make the civilized Indians a part of the body politic of the new government of Mexico. This court, however, refused to decide whether these Indians were citizens of the United States, but based its decision upon a want of distinctive entity as a tribe, band, or nation.
In the present case the findings establish that the defendant tribe had no chief, no organization, and no laws. But wholly different conditions otherwise prevail with respect to the defendant band. They were insolent and warlike. They were quite disposed to resist the encroachment of the whites upon what they called “ their country.” -They lived on the Klamath River, which had cleft its way through á canyon and emptied into the Pacific Ocean. Mountains *366 heavily timbered- describes the land adjacent to the river. Along the banks there were small bottoms of a few acres which in a way for- a time the Klamaths cultivated. But they lived largely upon roots, herbs, seeds, and such vegetables as they grew upon the small cultivated lands in the, bottoms and upon fish gathered from the stream upon which they lived. They were savages in fact. They numbered between two and three thousand souls and were recognized as reservation Indians. They adhered together as Klamaths and were Indians untaxed. Though they do not appear to have been in treaty relations with the United States, the official records disclose that they were given a reservation in the habitat where the Government found them after the acquisition of California. The reservation set apart for them as far back as 1855 appears never to have been surrendered and there remained a kind of entity until after these depredations outside their reservation. They had an agent and they occupied the soil very much as other aboriginal inhabitants. They were at all times and in all the departmental reports and records dealt with and referred to 'as a tribe. They lived in ranches and villages scattered along the banks of the river, and inasmuch as the Government made no attempt to remove them because of danger to the peace of the section we must assume that they were a savage domestic band within the meaning of the’ act under which the action is brought. The United States having ziever surrendered control of them, they continued, presumably, to be wards of the Government and within the exclusive jurisdiction of the authority of the United States. Montoya v. United States et al. (32 C. Cls., 350).
Whilst the matter is not free from doubt, the judgment of the court is that the defendant band constituted such an entity as upon any depredations committed by them under the conditions prescribed for recovery by the act of March 3,1891, the United States assumed to pay.
Judgment will be entered for claimant against the Kla-math Indians, otherwise known as Lower Klamath Indians, or Klamath River Indians, and the United States in the sum of three thousand three hundred and seventy-five dollars ($3,315).