## In re FULLER et al.

(Circuit Court of Appeals, Second Circuit. June 10, 1925.)

No. 307.

**1. Bankruptcy ⬤⟳54—Partnership not insolvent, unless separate and firm assets will not pay firm debts.**

A partnership is not insolvent, unless separate and firm assets will not pay firm debts.

**2. Bankruptcy ⬤⟳69 — Dormant partner in bankrupt partnership could be joined nunc pro tunc as alleged bankrupt, notwithstanding expiration of statutory period.**

Dormant partner in bankrupt partnership could be joined nunc pro tunc as alleged bankrupt, notwithstanding expiration of four months limitation of Bankruptcy Act, § 3b (Comp. St. § 9587), where failure to join him before expiration was due to excusable neglect caused by concealment of his membership in firm.

**3. Bankruptcy ⬤⟳79—Four-months limitation of Bankruptcy Act held not ordinary statute of limitations.**

The four-months limitation of Bankruptcy Act, § 3b (Comp. St. § 9587), is not an ordinary statute of limitations; its purpose being primarily to protect transferor, and not bankrupt.

**4. Bankruptcy ⬤⟳100(1) — Effect of adjudication stated.**

Adjudication in bankruptcy creates no debts of record, merges no debts in pais, and does nothing but sequester assets for distribution.

**5. Bankruptcy ⬤⟳100(2)—Original adjudication against partnership not vacated as condition to litigating issue of joining alleged dormant partner as alleged bankrupt.**

Where, after partnership was adjudged bankrupt, creditors sought to have alleged dormant partner joined as alleged bankrupt nunc pro tunc, original adjudication should not be vacated as condition to litigating issue against alleged partner, but should stand until issue was determined.

Manton, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Edward M. Fuller and another, individually and as partners, bankrupts. Petition by Charles A. Stoneham to revise an order of the District Court, amending nunc pro tunc a petition for the involuntary adjudication in bankruptcy of E. M. Fuller & Co., by adding thereto the name of Charles A. Stoneham, and directing a subpœna to issue against him as an alleged bankrupt. Affirmed.

See, also, 294 F. 71, and 9 F.(2d) 557.

Max D. Steuer and Samuel Gottlieb, both of New York City, for petitioner to revise.

Francis L. Kohlman, Carl J. Austrian, and Saul J. Lance, all of New York City, for petitioning creditors.

Chadbourne, Hunt, Jaeckel & Brown, of New York City (William M. Chadbourne and Carroll R. Ward, both of New York City, of counsel), for petitioning creditors.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. On June 26, 1922, three creditors, not those here concerned, filed a petition for the involuntary adjudication of Edward M. Fuller and William F. McGee, individually and as copartners, upon which they were adjudged bankrupts on July 20, 1922. Various investigations were conducted, which finally led receivers, who had been appointed, and the creditors, whom they advised, to believe that one Charles A. Stoneham, the revising petitioner herein, had been associated as a dormant or secret partner with Fuller and McGee, and that he was therefore responsible for the debts of the firm. Stoneham was himself examined for many days, beginning on May 28, 1923, and denied that he was a partner. He was indicted for perjury because of this denial during the summer of 1923, and the inquiries continued, though the substance of their disclosure is not material here. On April 25, 1924, three other creditors, the respondents herein, filed a petition, intervening as petitioning creditors, praying that a subpœna be served on Stoneham, that he be adjudged a general partner of the firm, and as such a bankrupt along with the other members. The purpose of this petition was to conclude Stoneham upon all questions, except as to his membership in the firm. This petition was denied, and the order is the subject of a separate appeal, heard along with this.

Upon the denial of that petition the same petitioners on November 5, 1924, filed an-

other petition, asking only that Stoneham be joined nunc pro tunc as a respondent, or alleged bankrupt, in the original petition for involuntary adjudication of June 26, 1922; the adjudication against Fuller and McGee meanwhile to stand. This the court granted, and it is this order which is now under review. Stoneham argues, that to introduce him into the proceedings is in effect to institute them against him de novo, and that, as on independent petition against him no act of bankruptcy could avail the petitioners which was more than four months old on April 25, 1924, the application is bad on its face; further that, if the time does not run from the filing of the original petition, at least it runs from the time when the present petitioning creditors learned of his alleged membership in the firm; again, if neither of these points be good, that the petition should have been denied for laches; finally, that in any event the original adjudication should have been vacated as a condition of prosecuting the present proceedings.

If this were a proceeding to make Stoneham a party defendant to an action upon a firm promise, and if the statute of limitations had run in his favor personally, we will not say that he could be joined. Not being named in the original process, even under New York Practice Act, § 16, service on his co-obligors would not toll the statute. Shaw v. Cock, 78 N. Y. 194. How far the fact that he was a dormant partner, and that his connection was unknown, might change the result we need not consider. We may assume, though for argument's sake only, that the statute would protect him.

[1, 2] That appears to us a wholly irrelevant consideration. The purpose of the proceedings was to sequester the assets of a group of traders, whoever they might be, ascertained by the business in which they were engaged, and to distribute them among their creditors. It asked no judgment against the members, and established none on which they could be held personally. Their right to a discharge was a purely ancillary and separate matter created for their benefit, independent of the bankruptcy. The failure of that purpose arose from the excusable neglect to include one who had concealed his connection, and this application is no more than an effort to bring into administration newly discovered firm assets. We say so advisedly because, since Francis v. McNeal, 228 U. S. 695, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706, the estates of the separate partners are to be considered as such, and as a corollary

the firm is not insolvent, unless the separate and the firm estates will not pay the firm debts. To assimilate such a proceeding to an action to recover judgment in personam seems to us without warrant.

In Metcalf v. Officer, Fed. Cas. No. 9,496, 5 Dill. 565, Judge Dillon and Judge Love overruled a demurrer to an assignee's suit against a creditor on a voidable preference. The objection was to the assignee's title for reasons, among others, similar to those now put forward. These the court overruled, and certainly meant to say that a partner might be brought into the firm proceedings after the period of limitation had run. Whether in any event the objection lay in the mouth of a creditor who had received a preference may be doubtful, but the ruling stands. In Re Kaufman, 176 F. 93, 99 C. C. A. 107, we reserved the point, but in Re Samuels, 215 F. 845, 132 C. C. A. 187, in effect we passed upon it in the creditors' favor, though it must be owned that the question was not discussed and apparently was not raised. With the exception of some unsupported statements in the text-writers, the point is, so far as we can find, res integra, and we rest upon the reasons already given.

[3] In addition it seems to us that Stoneham's position involves a confusion in respect of the limitation of four months in the Bankruptcy Act. That is in no sense the equivalent of an ordinary statute of limitations. Plainly the purpose of so short a limitation was not to protect the bankrupt from stale claims or from the fabrication or loss of evidence. All the acts of bankruptcy except the fifth depend upon transfers of property, voluntary or by operation of law. The law required dispatch of those who would unravel them, primarily no doubt in the interest of the transferee, though probably also so that the transferor might not be subject to a disruption of his affairs after they might have re-established themselves.

In the case of dormant partners such considerations do not apply, once the venture has been adjudicated. The persons aggrieved by the unfair discrimination against them have acted; so far as they can, they have brought before the court the whole group, and seek to sequester its assets in the interest of equality. If it in fact include other members and other assets, the limitation of the statute cannot be supposed to defeat the original effort so plainly indicated. Else through an entirely justifiable neglect, the petitioning creditors would be limited to the administration of the assets,

not of the group as it was, but of those of another which never had existed as a group at all. Insolvency must then be tried by the factitious test of the sufficiency of the assets of a part of the group's members to meet the liabilities of all. We cannot see how in reason one can escape recognizing at least the unity of the firm to this extent, or why the whole proceedings should be conducted in the interest of a fiction, maintained only for the benefit of one who has successfully covered his tracks.

Nor can we find any reason for limiting the period within which a dormant partner may be brought in to four months from the time that his connection becomes known, even supposing such a rule should apply here. For the reasons already given, the purposes of the limitation do not apply, since the transactions, on which the right to sequester the group's property depends, have by hypothesis already been challenged. Again, we say: The question is only of how large that property really is at the time of the adjudication. It may no doubt be true, though this case does not require any decision on it, that the creditors can by long enough inaction preclude themselves from seeking and reaching the estate of a dormant partner. That is no more than to say that they may be defeated by general equitable considerations in a court of equity; they are subject to the defense of laches. But we need not consider that question here, especially in view of the fact that we have before us only a petition to revise, under which we do not review the facts. At just what time it was incumbent upon the creditors to move we will not say; certainly the finding of the indictment did not absolutely set the time running. Nor, if it did, are we persuaded that a delay of eight months thereafter was fatal to their rights. Stoneham persisted, and indeed still persists, in his denials. The evidence on which the petitioning creditors thought they could safely rely came to their knowledge long after. Moreover, there is no shadow of warrant for saying that Stoneham was prejudiced by their delay. Why, if in fact he has been all along a partner with the rest, he should escape the consequences of his participation in the enterprise, we are unable to conceive.

[4, 5] The final question is whether the existing adjudication should be vacated as a condition of litigating the case against Stoneham. We can see no reason for so doing; it may turn out that Stoneham never was a partner, in which case the present adjudication should stand. This new litigation presupposes an alternative situation to that originally presented; only so does it involve the difficulties that we have considered. Until it appears that that alternative is the truth, the original posture of the case should stand. Nor is it true that the claims of the petitioners were merged in the adjudication. An adjudication in bankruptcy creates no debts of record, merges no debts in pais, does nothing but sequester the assets for distribution. The supposed analogies of ordinary judgments are inappropriate.

Order affirmed.

MANTON, Circuit Judge (dissenting). Below an order was entered granting the application made on November 5, 1924, by three intervening creditors of the bankrupts who ask to amend nunc pro tunc as of the date of its filing, June 26, 1922, an involuntary petition in bankruptcy against the above-named bankrupts. The order thus granted included the revising petitioner, Charles A. Stoneham, individually and as a general partner with the bankrupts. The firm was known as E. M. Fuller & Co., and they were adjudicated bankrupts on July 20, 1922. The order here sought to be revised did not vacate or set aside that adjudication upon granting the leave to amend nunc pro tunc the petition in bankruptcy. Thus, more than two years after the adjudication, Stoneham becomes a party to the bankruptcy petition, and, if the order below is sustained, his property, whether acquired before or since that adjudication, becomes part of the bankrupts' estate. The authority of the court to grant this order is here challenged. Because the court had not the authority to enter such an order nunc pro tunc, it is unnecessary to discuss the question of the exercise of discretion of the District Judge, although I think under the circumstances here disclosed, if authority were vested to exercise a discretionary power in granting the order, it should have been refused.

The prevailing opinion points out the absence of authoritative decision, and in effect says the case is therefore one of first impression. It has long been settled that the filing of an amended pleading in an action at law or suit in equity, wherein new parties are sought to be introduced, is tantamount to the commencement of a new suit. In re Broadway Savings Trust, 152 F. 152, 81 C. C. A. 58; United States v. Martinez, 195 U. S. 469, 25 S. Ct. 80, 49 L. Ed. 282; Miller's Heirs v. M'Intyre, 6 Pet. 63, 8 L. Ed. 320; French, Trustee, v. Hay, 89 U. S. (22 Wall.) 238, 22

L. Ed. 799; Brandenberg on Bankruptcy, § 171. If this adjudication prevails, it brings into the bankruptcy court not only firm assets, but Stoneham's individual property. Francis v. McNeal, 228 U. S. 695, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706. The force and effect of the petition of the intervening creditors on December 15, 1924, the date of the entry of the order and amended petition, amounted to an independent proceeding against Stoneham, and this as of June 26, 1922, the date of the filing of the original petition. Section 3b of the Bankruptcy Act (Comp. St. § 9587) provides that a petition against an alleged bankrupt must be filed within four months after the commission of the act of bankruptcy. There is ample authority for correcting errors, uncertainty of a petition, and insufficiency of statements, such corrections taking the form of an amendment; but such amendments may not have the effect of permitting the petitioners to file without the period mentioned in the statute. In re Stevenson (D. C.) 94 F. 110; In re McGraw (D. C.) 254 F. 442; In re Morosco Holding Co. (D. C.) 296 F. 516.

The effect of the present order, under the form of an entry as nunc pro tunc, is to extend the time specified in the statute beyond the four-months period. Judge Shelby spoke for this court in a bankruptcy case (In re Louisell Lumber Co., 209 F. 784, 126 C. C. A. 508), and said: "But the doctrine of relation back is not applicable where the amendment sets up a new cause of action, or where to cause it to relate back would have the effect of depriving an adverse party of a substantial right on which no attack was made in the original pleading. When an amendment introduces a new cause of action, the statute of limitations will run against it to the time when it is filed"—citing Union Pacific Ry. Co. v. Wyler, 158 U. S. 285, 15 S. Ct. 877, 39 L. Ed. 983; Sicard v. Davis, 6 Pet. 124, 8 L. Ed. 342. And further: "This rule is as well settled as the one first stated, and is applicable to amendments to petitions in bankruptcy."

Again we said in Re Morosco Holding Co., supra: "An amendment to avail them would of necessity have to specify an act of bankruptcy committed within four months from the date of the amendment. * * * 'The date of the amendment must be taken as the date from which the four-months period of section 3b is to be calculated.'"

It is apparent that the rule regarding the amendment of a petition in bankruptcy proceeding is covered by the same rules as relate to pleadings in other actions and as Brandenberg says in section 171 of his work: "An amended petition which sets up the same cause of action asserted in the original pleading, merely giving greater precision to charges already made, is regarded as a continuation of the original and relates back so as to take effect as of the date of the original. * * * The filing of an amended pleading is not the commencement of a new suit, unless it states a new cause of action or seeks more extensive relief or brings in new parties."

The Supreme Court, in United States v. Martinez, supra, said: "For obvious reasons, a party brought into court by an amendment, and who has for the first time an opportunity to make defense to the action, has a right to treat the proceeding, as to him, as commenced by the process which brings him into court."

The rule prevailing in the state of New York is announced to be: "If, between the time of the commencement of the suit and the time when the new parties are brought in, the period of limitation has expired, they may plead the statute in bar of their liability, although the defense may not be available to the original defendants. It would be unreasonable in such case to construe the amendment as relating to the time of the commencement of the action, so as to deprive new parties of the defense of the statute and their right to plead it, is saved without any express reservation in the order of amendment." Shaw v. Cock, 78 N. Y. 194.

At this late date intervening creditors have no lawful right to bring Stoneham into a court of bankruptcy, and to permit it to be done under the guise of a nunc pro tunc order is to extend the four-months period of the statute. Such an amendment is destructive of his rights; it is drastic and does not serve the purposes intended by section 3b of the Bankruptcy Act. Indeed, he is in effect deprived of his defenses for the adjudication still subsists. The adjudication is binding and conclusive upon the bankrupts and creditors as much as a judgment inter partes on due hearing in a court of competent jurisdiction. In re Hecox, 164 F. 823, 90 C. C. A. 627.

For these reasons I dissent.